## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| PHOENIX CAPITAL GROUP HOLDINGS, LLC, | §<br>§<br>§ | |
| **Plaintiff,** | §<br>§ | |
| v. | §<br>§ | **Case No. 1:23-cv-00209** |
| INCLINE ENERGY PARTNERS, L.P. | §<br>§ | |
| **Defendant.** | §<br>§ | |

### INCLINE ENERGY PARTNERS, L.P.'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

Respectfully submitted,

Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
Tel. 214.327.5000
Fax. 214.327.5001

Joshua A. Swanson
North Dakota Bar No. 06788
VOGEL LAW FIRM
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
701.237.6983
jswanson@vogellaw.com

*Attorneys for Defendant Incline Energy Partners, L.P.*

## <u>TABLE OF CONTENTS</u>

I.     SUMMARY ................................................................................................... 1

II.    BACKGROUND FACTS ............................................................................. 2

    A.    Phoenix's First Two Lawsuits Alleged That Incline Defamed It By Informing FIBT That Phoenix's Founder And Controlling Executive, Ferrari, Is A Felon. ... 2

    B.    Phoenix and Incline are Competitors. .................................................... 3

    C.    Phoenix Alleges Incline Disclosed Adam Ferrari's Criminal Record To Mineral Owners. ........................................................................................... 3

    D.    FIBT Declined to Fund a Loan After Phoenix "Explained" Its' Failure to Disclose Ferrari's Felony Status and Role. ............................................................. 4

III.   ARGUMENT .............................................................................................. 7

    A.    Legal Standard for Rule 12(b)(6) Motion ............................................... 7

    B.    Texas Law Should Govern the Substance of Phoenix's Claims ........................... 8

    C.    Because Phoenix's Claims Are Grounded in Fraud, It Must Satisfy the Particularity Requirements of Rule 9(b). ............................................................. 10

    D.    Phoenix's Tortious Interference with Contract Claim Should Be Dismissed ....... 12

        1.    Under Texas Law, Count 1 Lacks Plausibility ......................................... 12

        2.    Count 1 Also Lacks Plausibility Under North Dakota Law ..................... 13

            a.    Phoenix's Pleaded Facts Negate Breach ........................................ 13

            b.    If a Breach Occurred, Phoenix Failed to Plead Facts Suggesting Incline's Communication Rather than Phoenix's Communication Instigated Such Breach ................................................................. 14

            c.    Pleaded Facts and Facts that Can be Judicially Noticed Demonstrate Justification ............................................................. 15

            d.    The "Competition Privilege" Also Defeats "Without Justification" ................................................................................. 17

    E.    Phoenix's Claim for Tortious Interference with Business Expectancy, Count II, Lacks Plausibility ............................................................................. 18

        1.    The Elements of the Claim Are Similar Under Texas and North Dakota Law ................................................................................. 18

2.      Phoenix Fails to Plead Facts Demonstrating Independently Tortious or Wrongful Conduct ....................................................................... 19

      a.      Statements that Phoenix is Operated by a Felon Are True .......... 21

      b.      Phoenix's Contentions Premised on any Other Purportedly False or Defamatory Statement are Conclusory ........................................ 22

3.      Phoenix Fails to Plead Facts Regarding a Reasonable Business Expectancy Regarding "Mineral Owners"................................................. 23

F.      Phoenix's Unfair Competition Claim Lacks Plausibility..................................... 24

1.      Under Texas Law, "Unfair Competition" Requires an Underlying Tort.. 24

2.      Under North Dakota Law, "Unfair Competition" Requires a Trademark 24

G.      Phoenix's Unjust Enrichment Claim Lacks Plausibility....................................... 24

IV.      CONCLUSION............................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*
   823 F.3d 448 (8th Cir. 2016) ................................................................. 8

*ABF Freight Sys., Inc. v. Int'l Broth. of Teamsters*
   728 F.3d 853 (8th Cir. 2013) ................................................................. 8

*Amerinet, Inc. v. Xerox Corp.*
   972 F.2d 1483 (8th Cir. 1992) ............................................................. 17

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ............................................................................. 7

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ......................................................................... 7, 14

*Birnstill v. Home Sav. of Am.*
   907 F.2d 795 (8th Cir. 1990) ................................................................. 9

*Bohan v. Honeywell Int'l, Inc.*
   366 F.3d 606 (8th Cir. 2004) ................................................................. 7

*Briner Electric Co. v. Sachs Electric Co.*
   680 S.W.2d 737 (Mo.App.1984) ......................................................... 17

*Brookins v. Caterpillar Inc.*
   No. 3:18-CV-129, 2019 WL 1274932 (D.N.D. Jan. 11, 2019), *report and recommendation adopted*, No. 3:18-CV-129, 2019 WL 1281277 (D.N.D. Feb. 15, 2019) ..... 19

*Burris Carpet Plus, Inc. v. Burris*
   2010 ND 118, 785 N.W.2d 164 ........................................................... 24

*Butnaru v. Ford Motor Co.*
   84 S.W.3d 198 (Tex. 2002) ................................................................. 12

*Cantu v. Guerra & Moore, Ltd. LLP*
   328 S.W.3d 1 (Tex. App.—San Antonio 2009, no pet.) ........................ 23

*Coinmach Corp. v. Aspenwood Apartment Corp.*
   417 S.W.3d 909 (Tex. 2013) ............................................................... 19

*Combined Aircraft Ownership, LLC v. Learjet, Inc.*
   No. 3:22-CV-202, 2023 WL 4107036 (D.N.D. June 21, 2023) .............. 23

*Conoco, Inc. v. Inman Oil Co.*
  774 F.2d 895 (8th Cir.1985) ............................................................... 17

*Daley v. Am. States Preferred Ins. Co.*
  1998 ND 225, 587 N.W.2d 159 ...................................................... 9, 10

*Desperado Motor Racing & Motorcycles, Inc. v. Robinson*
  No. H-09-1574, 2010 WL 2757523 (S.D. Tex. July 13, 2010) ............... 23

*Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.*
  965 F.3d 365 (5th Cir. 2020) ............................................................. 25

*Dittmer Props., L.P. v. FDIC.*
  708 F.3d 1011 (8th Cir. 2013) ............................................................. 2

*Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*
  945 F. Supp. 220 (D. Kan. 1996) ...................................................... 22

*E-Shops Corp. v. U.S. Bank Nat. Ass'n*
  678 F.3d 659 (8th Cir. 2012) ............................................................. 15

*Farach v. Rivero*
  305 So. 3d 54 (Fla. Dist. Ct. App. 2019) ........................................... 21

*Fin. Review Services, Inc. v. Prudential Ins. Co. of Am.*
  50 S.W.3d 495 (Tex. App.—Houston [14th Dist.] 1998), *aff'd*, 29 S.W.3d 74 (Tex. 2000) ... 13

*Fluor Enterprises, Inc. v. Conex Intern. Corp.*
  273 S.W.3d 426 (Tex. App.—Beaumont 2008, pet. denied) ................... 12

*G.D. v. Kenny*
  15 A.3d 300 (N.J. 2011) ............................................................. 16, 21

*Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*
  465 S.W.3d 778 (Tex. App.—Dallas 2015, no pet.) .............................. 24

*Hilton v. N.D. Educ. Ass'n*
  655 N.W.2d 60 (N.D. 2002) ............................................................. 13

*Hurlbut v. Gulf Atl. Life Ins. Co.*
  749 S.W.2d 762 (Tex. 1987) ............................................................... 8

*In re Pre-Filled Propane Tank Antitrust Litig.*
  860 F.3d 1059 (8th Cir. 2017) .......................................................... 14

*KLE Const., LLC v. Twalker Dev., LLC*
  2016 ND 229, 887 N.W.2d 536 (emphasis added) ............................... 25

iv

*Kraft v. Essentia Health, Innovis Health, LLC*
  600 F. Supp. 3d 965 (D.N.D. 2021) ........................................................... 25

*Martin v. Hearst Corp.*
  777 F.3d 546 (2d Cir. 2015) .......................................................... 6, 16, 21

*Martinez v. Hardy*
  864 S.W.2d 767 (Tex. App.—Houston [14th Dist.] 1993, no writ) .......................... 8

*Massey v. Tandy Corp.*
  987 F.2d 1307 (8th Cir. 1993) ................................................................ 23

*Mathis v. Liu*
  276 F.3d 1027 (8th Cir. 2002) ............................................................... 14

*Meidinger v. Zoetis, Inc.*
  588 F. Supp. 3d 947 (D.N.D. 2022) ........................................................... 14

*Miller v. Redwood Toxicology Lab, Inc.*
  688 F.3d 928 (8th Cir. 2012) ................................................................. 8

*N. Bottling Co., Inc. v. Henry's Foods, Inc.*
  474 F. Supp. 3d 1016 (D.N.D. 2020) ....................................................... 11, 12

*N. Bottling Co., Inc. v. PepsiCo, Inc.*
  427 F. Supp. 3d 1106 (D.N.D. 2019), *aff'd*, 5 F.4th 917 (8th Cir. 2021) .................. 24

*N.A.A.C.P. v. Claiborne Hardware Co.*
  458 U.S. 886 (1982) .......................................................................... 22

*Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*
  829 F.3d 576 (8th Cir. 2016) ............................................................. 16, 22

*Ryan v. Ryan*
  889 F.3d 499 (8th Cir. 2018) ................................................................ 15

*Sadek v. Weber*
  948 N.W.2d 820 (N.D. 2020) .................................................................. 20

*Schoellkopf v. Pledger*
  778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) ........................................ 24

*Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*
  781 F.3d 1003 (8th Cir. 2015) ............................................................ 11, 20

*Teel v. Deloitte & Touche LLP*
  No. 3:15-CV-2593-G, 2015 WL 9478187, (N.D. Tex. Dec. 29, 2015) ............................ 22

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*
   300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied) ........................................ 25

*Thimjon Farms P'ship v. First Intern. Bank & Tr.*
   837 N.W.2d 327 (N.D. 2013) ................................................................. 18, 19

*US Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*
   966 F. Supp. 2d 690 (W.D. Tex. 2013) ........................................................... 19

*Ulrich v. Pope Cnty.*
   715 F.3d 1054 (8th Cir. 2013) .................................................................... 7

*Van Sickle v. Hallmark & Assocs., Inc.*
   744 N.W.2d 532 (N.D. 2008) ..................................................................... 13

*Vess v. Ciba–Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ................................................................... 11

*Wal–Mart Stores, Inc. v. Sturges*
   52 S.W.3d 711 (Tex. 2001)................................................................. 9, 12, 19

*Williams v. Cordillera Commc'ns, Inc.*
   26 F. Supp. 3d 624 (S.D. Tex. 2014) .......................................................... 16, 22

*Zean v. Fairview Health Servs.*
   858 F.3d 520 (8th Cir. 2017) ..................................................................... 8

*Zuger v. N. Dakota Ins. Guar. Ass'n*, 494 N.W.2d 135 (N.D. 1992)............................... 25

**Statutes**

Restatement (Second) of Torts § 768 (1979)........................................................ 17

TEX. CIV. PRAC. & REM. CODE § 73.055(c) ........................................................... 8

**Other Authorities**

Restatement (Second) of Conflict of Laws, § 145(2)(a)-(d) (1971) .............................. 10

*Restatement (Second) of Torts* § 768 cmt. i (1979) ............................................ 14

**Rules**

17 C.F.R. § 230.506 (d) ............................................................................ 1

Pursuant to Rule 12(b)(6), and concurrently with its Rule 12(b)(1) motion to dismiss based on abstention,[1] Incline Energy Partners, LP ("Incline") moves the Court to dismiss Phoenix Capital Group Holdings, LLC's ("Phoenix") Original Complaint, and in support respectfully shows the Court as follows.

## I.     SUMMARY

This lawsuit represents the third attempt by Phoenix or its proxy against Incline, each premised on the same facts:  Incline's discussion of the felony status of Phoenix's founder, Adam Ferrari, who also controls Phoenix.[2] Having found no success in the other two lawsuits, Phoenix repackaged its claims in an improper attempt to provide local interest and color to anchor jurisdiction and relevance in this venue, to avoid the stays imposed in the two cases pending in Texas, and in an effort to avoid res judicata that will bar the claims asserted here.  This Court should not condone Phoenix's blatant forum shopping or its race to res judicata.[3]

Further, in its Complaint filed here, Phoenix fails to satisfy federal pleading standards. Phoenix fails to satisfy Rule 9(b) with respect to its claims, all of which depend on allegations of unspecified "false statements of fact," and pleads facts that negate plausibility for its tortious interference with existing contract claim, fails to plead facts necessary for plausibility regarding its tortious interference with business expectancy and unjust enrichment claims, and cannot plead

---

[1] Incline files this motion to preserve the remedy provided by Rule 12(b)(6). The Court, however, need not resolve the motion if the Court grants incline's Rule 12(b)(1) Motion to Dismiss ("Abstention Motion"), or alternatively, transfers the case to the Northern District of Texas.

[2] *See* Phoenix's publicly filed Offering Circular, in which it belatedly revealed that Ferrari "is the economic interest owner of Lion of Judah, LLC" the sole capital contributing shareholder of Phoenix. https://www.sec.gov/Archives/edgar/data/1979999/000165495423007644/pcgh_1a.htm.   Ferrari's involvement in this capacity, while Phoenix raises money through public offerings, particularly offerings that did not disclose Ferrari's role, almost certainly violates SEC regulations.  *See* 17 C.F.R. § 230.506 (d).

[3] Pursuant to its Abstention Motion, Incline also moves this Court to dismiss the case, or in the alternative, to transfer this case to the United States District Court for the Northern District of Texas, where Incline will then move for consolidation with the case pending in that Court, *Ferrari v. Francis,* Cause No. 3:23-cv-00455 (the "Texas Federal Case").

a plausible unfair competition claim. If the Court does not dismiss this case based on *Colorado River* abstention, it should dismiss based on Rule 12(b)(6).

## II.      BACKGROUND FACTS

**A.      Phoenix's First Two Lawsuits Alleged That Incline Defamed It By Informing FIBT That Phoenix's Founder And Controlling Executive, Ferrari, Is A Felon.**

1.      On June 15, 2022, Phoenix filed suit against Incline and its principal, William Francis, in a Texas state district court.[4] See Phoenix Capital Grp. Holdings, LLC v. William Francis and Incline Energy Partners, LP, Case No. DC 06360, pending in the 116th District Court for Dallas County, Texas (the "Texas State Case").

2.      Adam Ferrari also filed suit against William Francis, individually.[5]   In the Texas Federal Case, the existence and subject matter of which the Court can judicially notice, Ferrari alleged Francis had defamed and slandered him by among other things,

> "[i]n approximately 2021 or 2022, upon information and belief, Mr. Francis sent one of his slanderous packets to First International Bank and Trust ('FIBT') in order to further disparage Mr. Ferrari and damage relations between Mr. Ferrari and potential investors. Based on information and belief, as well as Mr. Francis's pattern and practice of publishing false statements against Mr. Ferrari, Mr. Francis published false statements to FIBT, including that Mr. Ferrari was a felon, was acting as the CEO of Phoenix, and was defrauding mineral owners and investors." [6]

---

[4] Incline requests that this Court judicially notice the pleadings, orders, opinions, and dockets referenced below, including the Petition filed by Phoenix in the Texas Case, as well as the dates and progression of the pleadings in that case, and the trial court's order granting in part Incline's motion to dismiss. *See Dittmer Props., L.P. v. FDIC.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (in evaluating 12(b)(6) motion, court may consider "items subject to judicial notice, matters of public record, orders . . ."). For the court's convenience, copies of relevant pleadings from the Texas State Case are attached to the Abstention Motion.

[5] *Ferrari v. Francis*, Cause No. 3:23-CV-455, in the United States District Court for the Northern District of Texas, ("Texas Federal Case").

[6] *Id.*, First Amended Complaint, Dkt. No. 07, ¶ 25.

**B.      Phoenix and Incline are Competitors.**

3.      In this lawsuit, Phoenix asserts it is the "leading mineral and lease acquisition company in the Williston Basin region of North Dakota."[7]  Dkt. 1, ¶ 8. Incline is a direct competitor.  *Id.* at ¶ 13.

4.      Phoenix contends it competes by "deploying its proprietary technology and decades of industry experience."  *Id.* at ¶ 14.  Phoenix pleads it is successful because it "offers the best price to mineral rights owners."  *Id.* at ¶ 16.

5.      According to Phoenix, Incline succeeds because it can fund deals faster than Phoenix. *Id.* at ¶ 17.  Incline has also had a competitive advantage over Phoenix in the Williston Basin because of "its advantage in financing," which allows it to "close deals quickly with immediately available funds." *Id.* at ¶ 38; 39.  Thus, according to Phoenix, mineral owners in the Williston Basin *choose to sell* to Incline rather than Phoenix because Incline can fund deals faster than Phoenix.  *Id.* at ¶ 40.

6.      Phoenix would purportedly "dominate" the North Dakota marketplace "if it could match Incline's speed of closing."  *Id.* at ¶ 41.

**C.      Phoenix Alleges Incline Disclosed Adam Ferrari's Criminal Record To Mineral Owners.**

7.      Phoenix asserts Incline purportedly interferes with Phoenix's potential acquisitions, through allegedly defamatory statements about Phoenix made by Incline's principal, William Francis.  *Id.* ¶ 18.

8.      The Court may judicially notice the criminal records of Adam Ferrari, who founded Phoenix through entities he owned but controlled through his parents who have no relevant oil and

---

[7] Incline does not concede the truth or accuracy of any of the pleaded *facts* on which Phoenix relies, but for purposes of this Motion only, does not challenge such facts.  Incline, however, does not concede the sufficiency of any conclusory allegation.

gas or investing experience.  Ferrari's true role with Phoenix was originally concealed, and he was labeled as Phoenix's most valued "consultant," but more recently has been minted as Phoenix's Vice President of Engineering.[8]  Those records demonstrate that Ferrari pleaded guilty to three felony counts in connection with defrauding a mineral owner in Colorado.  *Id.*

9.     Phoenix alleges "several" mineral owners in North Dakota, including the "Bakke Family" in Williams County, sold to Incline rather than Phoenix, purportedly "because of Incline's disparagement campaign."  *Id.* at ¶ 21.  The Bakke Family was allegedly "*intentionally misled* through *underhanded* bullying tactics."  *Id.*

10.     According to Phoenix, Incline's "campaign to take advantage of" North Dakota mineral rights owners included statements to potential lessors, "including the Bakke Family," that "Phoenix was operated by criminals, *among other false statements*."  *Id.* at ¶ 22.

**D.     FIBT Declined to Fund a Loan After Phoenix "Explained" Its' Failure to Disclose Ferrari's Felony Status and Role.**

11.     Phoenix had a debt financing relationship with First International Bank and Trust ("FIBT"), a bank that operates from Watford City, North Dakota.  *Id.* at ¶ 26.  Phoenix's relationship with FIBT allegedly began in 2020 and was extended to the following year.  *Id.* at ¶¶ 27–28.

12.     In April 2022, Phoenix committed to borrowing $50,000,000 from FIBT, but Phoenix concedes closing the loan was based on FIBT's *sole discretion*, so long as the discretion was exercised in good faith.  *Id.* at ¶¶ 31–32.

---

[8] *See* Texas Federal Case, Dkt Nos. 10 (Appendix in support of Motion to Dismiss) and 31 (denying motion to seal same).

13.     FIBT had a "deep relationship" with Phoenix and was familiar with how funds Phoenix intended to borrow "were being deployed." *Id.* at ¶ 59.  Based on its familiarity, FIBT offered Phoenix more favorable terms than other lenders.  *Id.*

14.     According to Phoenix, as of May 4, 2022, FIBT President Justin Voll informed Phoenix it would "do its best to hit" the end of May 2022 to close the loan, but "there is still a lot of work *and negotiation to do* on the final loan documents."  ¶ 36 (emphasis added).

15.     On May 5, 2022, Francis emailed Joel Brown (whose role is not disclosed) to discuss a loan to Incline, as well as "another issue." *Id.* ¶ 44.  Later the same day, Brown solicited additional information regarding Phoenix, and stated he intended to circulate that information to key FIBT personnel. *Id.* ¶ 46.

16.     Francis then emailed information to FIBT regarding Ferrari's association with Phoenix, and stated accurately, that "the entirety of the body of evidence points to a convicted criminal who pleaded guilty to defrauding mineral owners in Colorado as the controlling force that's actually running Phoenix.  After digesting all of the instruments which have been filed with the SEC and elsewhere, for someone to consume those and still believe Adam is not actually running Phoenix would be akin to believing his paralyzed father has been one of the most active mineral buyers in the Williston since Adam was arrested." *Id.* ¶ 48.

17.     Phoenix also alleges that the Francis's email to Brown "made *numerous false accusations* about Phoenix's current Vice President of Engineering, Adam Ferrari, accused him of committing various crimes while omitting the fact that *the charges were dropped* and the matter vacated, and *lying* to investors about his role in the business." *Id.* at ¶ 49.  Phoenix does not

identify the "numerous false accusations," allege that an allegation that Ferrari committed various crimes was false or identify any alleged "lies."[9]

18.     Following discovery of Ferrari's criminal record,[10] FIBT began its own investigation regarding whether Phoenix had omitted material information in its disclosures and was violating SEC regulations and sought information from Phoenix.  *Id.* at ¶ 51.  ("I understand that you have expressed some concern that not including Mr. Ferrari in the Offering Statement could constitute a material omission based upon Mr. Ferrari's "influence" with the Company.").  Further, despite the role Phoenix initially claimed Ferrari held—an expert consultant—Phoenix was unable to convince FIBT that Ferrari was not a "significant employee" within the scope of relevant SEC regulations.  *Id.* ¶¶ 52–54.

19.     Instead, Phoenix argued to FIBT that Ferrari did not fall within the scope of "significant employees" who "made significant contributions to the business of the issuer."  Phoenix, disclaimed Ferrari's "legal authority" to bind the Company, "to its knowledge," and informed FIBT that Ferrari did not possess "influence," within the scope of relevant SEC regulations, which Phoenix argued FIBT was evaluating subjectively.  *Id.* at ¶ 52.

20.     FIBT apparently rejected Phoenix's characterization of Ferrari's role, as well as its justification for excluding disclosure of Ferrari's role with Phoenix in its offering statements.  On May 11, 2022, FIBT terminated the incomplete credit facility transaction, which Phoenix alleges occurred, in a "bad faith exercise of [FIBT's] . . . discretion."  *Id.* at ¶ 53.

---

[9] Again, the Court may judicially notice the existence of Ferrari's guilty plea to felonies involving forgery and false statements to a mineral owner in Colorado.  Ferrari's satisfaction of his plea deal does not change history by changing factually, the truth of his status as a felon.  *See Martin v. Hearst Corp.*, 777 F.3d 546, 551 (2d Cir. 2015) ("The [Erasure] statute" by which former arrest records are deemed to have never occurred "creates legal fictions, but it does not and cannot undo historical facts or convert once-true facts into falsehoods.").

[10] Notably, Phoenix pleads no facts regarding Ferrari's guilty plea to felonies related to defrauding a mineral owner.  The Court, however, may judicially notice the existence of Ferrari's guilty plea.  *Texas Federal Case*, Dkt. No. 10.

### III.   <u>ARGUMENT</u>

**A.   Legal Standard for Rule 12(b)(6) Motion**

Surviving a Rule 12(b)(6) motion to dismiss requires pleading enough facts to state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The allegations must raise a right to relief above the speculative level.  *Id*. at 555.  In other words, a Plaintiff must allege sufficient factual content to nudge its claim "across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (quoting *Twombly*, 550 U.S. at 570)).

In deciding a motion to dismiss, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the non-movant.  *Bohan v. Honeywell Int'l, Inc.*, 366 F.3d 606, 608 (8th Cir. 2004).  Phoenix, like all plaintiffs, must provide "more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do."  *Twombly*, 550 U.S. at 556.  Courts do not accept as true conclusory allegations or unwarranted deductions of fact.  *Id*.  Further, while the court must accept all factual allegations of the complaint as true, it need not accept legal conclusions or "formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678.  Moreover, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  Just as importantly for this case, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

Rule 12(b)(6) motions are also the appropriate mechanism for attacking claims that are legally defective.  *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1058 (8th Cir. 2013) (stating that dismissal under Rule 12(b)(6) is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").  Finally, although they "generally must be affirmatively pled and proved," *ABF Freight Sys., Inc. v. Int'l Broth. of*

*Teamsters*, 728 F.3d 853, 861 (8th Cir. 2013), affirmative defenses may also "provide a basis for dismissal under Rule 12(b)(6)" where they are "apparent on the face of the complaint, which includes public records and materials embraced by the complaint and materials attached to the complaint." *A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453 (8th Cir. 2016) (internal quotation marks and alternations omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the Court may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

## B.    Texas Law Should Govern the Substance of Phoenix's Claims

First, but notably, Texas law differs significantly from North Dakota law with respect to limitations and other issues.  For instance, because all of Phoenix's claims depend on alleged interference through allegedly defamatory statements, under Texas law, the claims are governed by the same one-year limitations period that governs a defamation claim. *See Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768  (Tex. 1987) (Where "gravamen of the claim" is injury to a plaintiff's reputation because of defamatory statements, the one year defamation limitation period governs such claim); *Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex. App.—Houston [14th Dist.] 1993, no writ) ("[S]ince Martinez' claim for tortious interference with contract is inextricably intertwined with and dependent upon her claim for slander the one-year limitation period for slander applies."). Equally important, Phoenix's claim for punitive damages is also barred by Texas' Defamation Mitigation Act, a statute for which North Dakota appears to have no parallel. *See* TEX. CIV. PRAC. & REM. CODE § 73.055(c) ("If not later than the 90th day after receiving

knowledge of the publication, the person does not request a correction, clarification, or retraction, the person may not recover exemplary damages."). Elements of Phoenix's tortious interference claims also differ significantly under Texas law. For instance, under Texas law, Phoenix's tortious interference with existing contract claim, Count I, also requires independently tortious conduct. *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001) ("Independently tortious" as needed to support a tortious interference claim means conduct that violates some recognized tort duty).

The conflicts between Texas and North Dakota law are not academic because utilizing the "most significant relationship" test applied by North Dakota, Texas law will govern the torts asserted by Phoenix. *See Daley v. Am. States Preferred Ins. Co.*, 1998 ND 225, ¶ 14, 587 N.W.2d 159, 162 (choice of law requires analysis of which state has the "most significant relationship" to the parties and issues involved). The approach turns on evaluation of "specific contacts with the jurisdictions," followed by policy considerations outlined in section 6 of the Restatement. *Id.* All of the specific contacts relevant to tort cases favor Texas law: "the place where the injury occurred;[11] the place where the conduct causing the injury occurred;[12] the domicile, nationality, residence, place of business, or place of incorporation of the parties;[13] and the place where the

---

[11] Phoenix, a Delaware entity with Colorado and Texas offices, was "injured" in one of those states. *See Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 798 (8th Cir. 1990) (applying Missouri law to conclude injury occurred where injured plaintiff resides).

[12] Incline's "conduct" relative to Phoenix's claims occurred in Texas, where it and its officers and employees reside, and the location from which its communications were made. Dkt. 1, ¶ 2; *see also* Texas Federal Case, Amended Complaint, ¶ 5, "a substantial part of the events or omissions giving rise to the action occurred within this judicial district [the Northern District of Texas]."

[13] Incline is a Texas entity, residing in Texas. Dkt. 1, ¶ 2. Phoenix is neither incorporated, domiciled, nor operating a principal place of business in North Dakota. *Id.* at ¶ 1.

relationship, if any, between the parties is centered."[14] *Id.* at n. 3 (citing Restatement (Second) of Conflict of Laws, § 145(2)(a)-(d) (1971)).

Similarly, the balance of policy considerations enumerated in section 6 also favor Texas,[15] particularly, Texas's relative interest in res judicata for judgments rendered by its courts,[16] "certainty, predictability and uniformity of result" and "ease in the determination and application of the law to be applied." *Id.* at n.4. Certainly "protecting justifiable expectations" also favors Texas law, given Phoenix's "expectation" that Texas law governed the same dispute when it filed its Texas State Case. Further, although Phoenix attempts to anchor its claims as important to North Dakota residents and thus this court, no North Dakota residents are or have sued Incline for *any* misrepresentations or inappropriate conduct, including the conduct underlying Phoenix's claims. Texas law should govern this dispute. In an abundance of caution, however, Incline also provides an analysis under North Dakota law.

## C.    Because Phoenix's Claims Are Grounded in Fraud, It Must Satisfy the Particularity Requirements of Rule 9(b).

Phoenix pleads that Incline purportedly "***intentionally misled***" mineral owners through "bullying tactics" and "false statements of fact" about Phoenix, and "lied" to those same owners. Dkt. 1 ¶ 20, 21; 75. Similarly, it pleads Incline engaged in a "***campaign to take advantage of North Dakota mineral rights holders***," pursuant to which "Incline's agents told potential lessors, including but not limited to the Bakke Family, that Phoenix was operated by criminals, ***among***

---

[14] The parties do not have a relationship and thus the final factor has no relevance.

[15] The policy considerations are: "the needs of the interstate and international systems; the relevant policies of the forum; the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue; the protection of the justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied." *Daley*, 1998 ND 225, 587 N.W.2d 159, 162, n. 4, citing Restatement (Second) of Conflict of Laws, § 6(2)(a)-(g) (1971)).

[16] *See* the Abstention Motion for a discussion of the application of *res judicata* to Phoenix's claims.

*other false statements,* in order to scare North Dakota mineral owners. . .”  *Id.* ¶ 22.   These

contentions are grounded in fraud.  *See Vigeant v. Meek*, 953 F.3d 1022, 1027 (8th Cir. 2020)

(breach of fiduciary duty claim premised on provision of “inaccurate and misleading information”

was grounded in fraud and governed by Rule 9(b)).  Accordingly, Phoenix must satisfy Rule 9(b).

*Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010–11 (8th Cir.

2015) (“Claims ‘grounded in fraud’ must meet this heightened pleading requirement.”); *see also*

*Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003) (“[I]n cases in which fraud

is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of

fraud.”).

Rule 9(b) requires that “[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake.” Fed. R. Civ. P. 9(b).  Satisfying the Rule’s

requirements mandates pleading the “who, what, where, when, and how” of the alleged deceit.  *N.*

*Bottling Co., Inc. v. Henry’s Foods, Inc.*, 474 F. Supp. 3d 1016, 1020–21 (D.N.D. 2020).  Here,

although Phoenix contends Incline “intentionally misled” mineral owners and intended to

manipulate them with false statements so they chose to contract with Incline rather than Phoenix,

it fails to identify the statements that were made, fails to identify who made the statements, when,

where, or how. Moreover, although Phoenix contends the statements were made to “several

mineral owners, including but not limited to the Bakke Family,” Phoenix fails to identify who the

Bakke Family of Williams County is, or to which purported members of the “Family” such

statements were purportedly made, and fails to identify any other mineral owners to whom the

purported statements were allegedly made.  Further, although Phoenix also alleges that “in its

campaign to *take advantage of* North Dakota mineral rights holders, Incline’s agents told potential

lessors” that Phoenix “was operated by criminals, *among other false statements*,” *Id.* at ¶ 22,

Phoenix omits even a hint at what those "other false statements" might be.  If Phoenix relies on any other alleged false and misleading statements, it must plead them in compliance with Rule 9(b).  *See N. Bottling Co., Inc.*, 474 F. Supp. 3d at 1024 (dismissing claims that rely on "other potential allegations of deceit" where plaintiff failed to specify what was said).  Phoenix wholly fails to satisfy Rule 9(b) with respect to each of its claims.

**D.    Phoenix's Tortious Interference with Contract Claim Should Be Dismissed.**

Under Texas law, as well as alternatively North Dakota law, Phoenix fails to plead a plausible tortious interference claim.

### 1.    Under Texas Law, Count 1 Lacks Plausibility

The elements of tortious interference with existing contract under Texas law are (1) the existence of a contract; (2) willful and intentional interference; (3) the interference proximately caused the damages; and (4) actual damage or loss suffered by the plaintiff.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).  The willful and intentional interference element requires tortious or unlawful conduct. *Wal–Mart Stores, Inc.*, 52 S.W.3d at 713 ("Independently tortious" as needed to support a tortious interference claim means conduct that violates some other recognized tort duty).  In support of its first claim, Phoenix pleads only the contents of Incline's communication with FIBT, none of which is false and therefore wrongful.[17]  Phoenix accordingly fails to plead facts supporting the second element of the claim.

Similarly, because Phoenix pleaded that FIBT had sole discretion to terminate the agreement, Phoenix pleads facts negating tortious interference by Incline. Inducing a third party to do what it had a right to do does not constitute tortious interference.  *Fluor Enterprises, Inc. v. Conex Intern. Corp.*, 273 S.W.3d 426, 442 (Tex. App.—Beaumont 2008, pet. denied) (citing *ACS*

---

[17] *See* Dkt. 1, ¶ 48; *and see* Texas Federal Case, Dkts, 10, 14 (Ferrari criminal records).

*Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex.1997) (where contract at issue permitted action taken by party that allegedly breached, defendant did not induce breach).

Finally, under Texas law, justification or privilege provides an affirmative defense to the claim.  As discussed below under the North Dakota analysis, Incline's privilege to discuss Phoenix's public disclosures defeats the claim.  *See Fin. Review Services, Inc. v. Prudential Ins. Co. of Am.*, 50 S.W.3d 495, 505 (Tex. App.—Houston [14th Dist.] 1998), *aff'd*, 29 S.W.3d 74 (Tex. 2000) ("Giving truthful information to a third party does not constitute improper interference with contractual relations.").

### 2.    Count 1 Also Lacks Plausibility Under North Dakota Law

Under Northa Dakota law, the elements of a plausible tortious interference claim are (1) an existing contract; (2) breach of the existing contract; (3) the defendant instigated the breach, (4) without justification. *Van Sickle v. Hallmark & Assocs., Inc.*, 744 N.W.2d 532, 540 (N.D. 2008); *Hilton v. N.D. Educ. Ass'n,* 655 N.W.2d 60 (N.D. 2002).   Although Phoenix contends it "committed to borrow" $50,000,000 from FIBT and paid a commitment fee, it also admits FIBT had *sole discretion* to complete the transaction.[18]  *Id.* at 31–32.  Phoenix fails to plead a breach by FIBT, instigation of any breach by Incline, or the absence of justification.

#### a.    Phoenix's Pleaded Facts Negate Breach

Indeed, while Phoenix pleads in conclusory fashion that FIBT's termination was "in bad faith," Dkt. 1, ¶ 54, on the contrary, Phoenix's pleadings demonstrate FIBT exercised its discretion to terminate the potential loan the day after Phoenix attempted to justify its failure to disclose

---

[18] In support of its tortious interference with existing contract claim, Count One, Phoenix pleads "valid contracts existed between Phoenix and FIBT."  Dkt. 1, ¶ 64.  But Phoenix also pleads that its initial $1,000,000 credit facility with FIBT, which began in October 2020, was extended for one more year only. *Id.* ¶¶ 27–28.  Thus, on its face, Phoenix's 2020 credit facility with FIBT was not an existing contract.

Ferrari's role with the Company.  *Id.* at ¶¶ 52–53.  And notably, the excerpted communication does not include any discussion of Ferrari's guilty plea to felony charges.

Equally important to the plausibility analysis, Phoenix fails to include a single fact that suggests FIBT exercised its discretion in bad faith and instead asserts a conclusion in that regard. "FIBT terminated the agreement in bad faith exercise of its discretion." *Id.* at ¶ 53.  This Court, however, should not credit such a conclusory allegation, particularly in light of the additional pleaded facts that provide a good faith basis for FIBT's termination.  *See Twombly*, 550 U.S. at 556; *Meidinger v. Zoetis, Inc.*, 588 F. Supp. 3d 947, 950 (D.N.D. 2022) ("A complaint does not 'suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017)).  Further, no breach occurs when a party terminates such an at-will contract.  *See Mathis v. Liu*, 276 F.3d 1027, 1030 (8th Cir. 2002)  ("[A] party's interference with an at-will contract is "'primarily an interference with the future relation between the parties," and when an at-will contract is terminated there is no breach of it.'") (quoting *Restatement (Second) of Torts* § 768 cmt. i (1979)).  Because Phoenix pleaded that FIBT possessed *sole discretion* to complete the transaction, absent facts suggesting bad faith Phoenix has not pleaded factual support of a breach by FIBT.

### b.   If a Breach Occurred, Phoenix Failed to Plead Facts Suggesting Incline's Communication Rather than Phoenix's Communication Instigated Such Breach

Phoenix pleads as a conclusion that Incline "acted intentionally to instigate the breach by FIBT…" ¶ 66.  But Phoenix also pleads its own unsatisfactory communication to FIBT, following Incline's communications, by which Phoenix attempted but evidently failed, to satisfy FIBT regarding Phoenix's compliance with SEC regulations. ¶¶ 51–52.  No facts, other than Phoenix's bare conclusion, suggest that FIBT terminated the transaction because of Incline's communication, rather than Phoenix's own communication.  On the contrary, while the pleaded facts support the

inference that FIBT's "newfound interest" in Phoenix's debt program arose from Incline's communications, FIBT sought additional information from Phoenix about the subject matter of Incline's communication—Ferrari's role with Phoenix and Phoenix's compliance with SEC regulations which apparently require disclosure of "significant employees," particularly those who have pleaded guilty to felonies.  *Id.*  FIBT did not exercise its discretion to terminate the transaction with Phoenix until the day after it received Phoenix's written communication, and two days after a call with Phoenix.  *Id.*, ¶¶ 51–53.  Thus, Phoenix's assertion that Incline's communication brought about FIBT's termination of the transaction is a conclusion contradicted by Phoenix's own communication.  *See E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012) (Affirming 12(b)(6) dismissal where, "[t]here are no factual allegations that U.S. Bank's conduct, as opposed to those of the unknown parties, made it more expensive for E–Shops to fulfill its contract with HSBC."); *see also Ryan v. Ryan*, 889 F.3d 499, 506 (8th Cir. 2018) (affirming 12(b)(6) dismissal where plaintiff failed to plead sufficient facts supporting inference that defendant manipulated stock, and relied instead on lost value as a conclusion supporting manipulation and causation).

### c.   Pleaded Facts and Facts that Can be Judicially Noticed Demonstrate Justification

Additionally, the factual basis for Incline's communications as reflected in the excerpted email from Francis also evidences "justification" that negates plausibility.[19]  Phoenix's tortious interference claim rests on Incline's purportedly false or disparaging "communication" about Phoenix to FIBT.  Dkt. 1, ¶ 48; 65.  A true statement, like a statement of opinion, however, is privileged and therefore not "without justification."  N.D. Const. art. I, § 4 (Every person "may freely write, speak and publish his opinions on all subjects, being responsible for the abuse of that

---

[19] As noted above, justification or privilege is also an affirmative defense under Texas law.

privilege."). Thus, Phoenix can satisfy the "without justification" element of this claim only if it is alleging and has pleaded, defamation.[20] *See Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 579–80 (8th Cir. 2016) ("Where a tortious interference claim is based upon an alleged defamation, if a plaintiff's defamation claim fails, the tortious interference claim must also fail because the plaintiff cannot establish an absence of justification as a matter of law.") (internal quotation omitted)). True statements are not defamatory as a matter of law. *Id.*

But Francis's statements about Ferrari's control over Phoenix are at best opinion ("for someone to consume those and *still believe* Adam is not actually running Phoenix…"), and thus not actionable defamation. *Others First, Inc.*, 829 F.3d at 580 ("Statements of opinion are protected by the First Amendment, and, even if made maliciously or insincerely, cannot be actionable."). Similarly, Phoenix's vague references to Ferrari's criminal background, although certainly not pleaded with sufficient specificity, is not actionable as defamation or disparagement because such statements are true. *See Williams v. Cordillera Commc'ns, Inc.*, 26 F. Supp. 3d 624, 631 (S.D. Tex. 2014) ("Whether guilt is confessed or guilt is pled, the reputation-damaging fact is being guilty of the crime."); *see also Martin v. Hearst Corp.*, 777 F.3d 546, 551 (2d Cir. 2015) ("The [Erasure] statute" by which former arrest records are deemed to have never occurred "creates legal fictions, but it does not and cannot undo historical facts or convert once-true facts into falsehoods."); *G.D. v. Kenny*, 15 A.3d 300, 314–15 (N.J. 2011) ("The [expungement] statute does not, however, impose any duty on members of the public who are aware of the conviction to pretend that it does not exist. . . . [T]he statute authorizes certain persons to misrepresent their own past. It does not make that representation true.")).

---

[20] Indeed, Phoenix's identical claims against Incline in the Texas State Case were framed in this manner, resting on the contention that Incline defamed Phoenix through the same purported communication to FIBT. *See* Original Petition. The Texas district court, however, dismissed that claim, which the Texas Appellate Court recently affirmed.

### d. The "Competition Privilege" Also Defeats "Without Justification"

As set out in § 768 of the Restatement, an exception applies to potential liability for tortious interference[21] based on competition. Phoenix's pleaded facts demonstrate the facial application of this privilege. The Restatement provides as follows:

> § 768 Competition as Proper or Improper Interference
>
> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
>  (a) the relation concerns a matter involved in the competition between the actor and the other and
>
>  (b) the actor does not employ wrongful means and
>
>  (c) his action does not create or continue an unlawful restraint of trade and
>
>  (d) his purpose is at least in part to advance his interest in competing with the other.
>
> (2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

Restatement (Second) of Torts § 768 (1979). As used in this provision, "wrongful" "refers to means which are intrinsically wrongful—that is, conduct which is itself capable of forming the basis for liability of the actor." *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1507 (8th Cir. 1992) (quoting *Conoco, Inc. v. Inman Oil Co.,* 774 F.2d 895, 907 (8th Cir.1985) (interpreting Minn. Law)); *see also Briner Electric Co. v. Sachs Electric Co.,* 680 S.W.2d 737, 741 (Mo.App.1984) ("[C]ompetitive conduct which is neither illegal nor independently actionable does not become actionable because it interferes with another's prospective contractual relations.").

Here, Phoenix pleads that Incline and Phoenix are competitors, ¶ 13; that the financing Phoenix sought from FIBT concerned a matter involving the parties' competition, ¶ 42 (Incline

---

[21] The "competition privilege" applies to both of Phoenix's tortious interference claims.

allegedly sought to interfere with the FIBT transaction to "eliminate Phoenix's financing to maintain its competitive advantage of closing speed"); and that Incline's interest in communicating with FIBT was to advance its own competitive interest. *Id.* at ¶¶ 42, 50 ("The only purpose for the May 5, 2022, communication was to harm Phoenix and improve Incline's position in the North Dakota marketplace. . ."). It does not plead that any of the information discussed in Francis's email to FIBT was false, defamatory, or otherwise intrinsically wrongful. Thus, the facts Phoenix pleads demonstrate the facial application of this defense.

Phoenix failed to plead facts supporting wrongful conduct, breach, causation, instigation or the absence of justification, and thus under either Texas or North Dakota law, its claim for tortious interference with contract must be dismissed. Moreover, because the facts Phoenix has pleaded *negate* breach by FIBT (its discretion to terminate the contract, and communications from Phoenix demonstrating a good faith exercise of that discretion), the claim should be dismissed with prejudice. *See Thimjon Farms P'ship v. First Intern. Bank & Tr.*, 837 N.W.2d 327, 334 (N.D. 2013) ("[O]rdinarily justification is a question of fact, but justification can be decided as a matter of law by showing a defendant was justified by a lawful object which he had a right to assert.") (internal quotation omitted)).

### E.   Phoenix's Claim for Tortious Interference with Business Expectancy, Count II, Lacks Plausibility

#### 1.   The Elements of the Claim Are Similar Under Texas and North Dakota Law

Phoenix's interference with business expectancy claim, Count Two, also lacks pleaded factual support necessary to satisfy the plausibility standard. The elements of Phoenix's second claim under Texas law are "(1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from

occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., that the defendant's actions *prevented the relationship from occurring." U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F. Supp. 2d 690, 702 (W.D. Tex. 2013).  The elements under North Dakota law are similar: "(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted." *Thimjon Farms P'ship*, 837 N.W.2d at 334–35; *Brookins v. Caterpillar Inc.*, No. 3:18-CV-129, 2019 WL 1274932, at *7 (D.N.D. Jan. 11, 2019), *report and recommendation adopted*, No. 3:18-CV-129, 2019 WL 1281277 (D.N.D. Feb. 15, 2019).  For different reasons, the claim fails as to interference with the unidentified mineral owners and the generic "Bakke Family," as well as FIBT.

### 2.      Phoenix Fails to Plead Facts Demonstrating Independently Tortious or Wrongful Conduct

Just as with the tortious interference claim premised on an existing contract, Phoenix's second claim for interference with prospective contract requires Phoenix to plead tortious or unlawful conduct by Incline.  *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (tortious interference with prospective business relations includes element of independently tortious or unlawful conduct by defendant); *Wal-Mart Stores, Inc.*, 52 S.W.3d at 726 ("We therefore hold that to recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful."); *Thimjon Farms P'ship.*, 837 N.W.2d at 334–35.

With respect to both FIBT and "mineral owners," Phoenix attempts to anchor the independently tortious element of the claim on its assertions that Incline defamed or disparaged it, or unfairly competed with it.  As demonstrated below, however, the unfair competition claim lacks plausibility and must be dismissed with prejudice.  Similarly, as discussed above, Phoenix cannot rely on defamation or disparagement for the independently tortious conduct because (1) Incline's statements regarding Ferrari's role as a felon are true; and (2) Incline's statements about Ferrari's control over Phoenix are opinion.  Moreover, these torts, like fraud upon which Phoenix's claims are grounded, must be pleaded with Rule 9(b) specificity, which Phoenix failed to do.  *See Streambend Properties II, LLC*, 781 F.3d at 1010–11; *Sadek v. Weber*, 948 N.W.2d 820, 824 (N.D. 2020) ("Deceit" requires the same degree of specificity in pleading as fraud under Rule 9(b)).

With respect to the purportedly independently tortious act regarding "mineral owners," Phoenix relies on either fraud (as discussed above) or defamation, pleading as follows:

> 21.　　Several mineral owners, including but not limited to the Bakke Family in Williams County, chose Incline because of Incline's disparagement campaign, despite the fact that Phoenix was offering more money. In doing so, they were *intentionally misled* through underhanded bullying tactics, denying them and other North Dakotans a fair opportunity to maximize the returns they deserved for their rights.

> 22.　　As part of its campaign to take advantage of North Dakota mineral rights holders, Incline's agents told potential lessors, including but not limited to the Bakke Family, that Phoenix was operated by criminals, among other false statements, in order to scare North Dakota mineral owners into paying more to Incline rather than selling or leasing to Phoenix.

> 74.　　Defendant Incline wrongfully, without justification, and illegally interfered with Phoenix's reasonable expectation of economic advantage or benefit by willfully and maliciously causing FIBT to terminate their ongoing business with Phoenix and inducing mineral owners to pay more to Incline rather than do business with Phoenix by scaring the mineral owners with *false disparaging* statements about Phoenix.

75.     Incline's communication of *false statements of fact*, *publishing other facts in a false light*, unfairly competing, to consumers and businesses in North Dakota for the purpose of harming Phoenix was otherwise tortious.

Because it fails to provide any of the specific information required by Rule 9(b), these allegations do not suffice.  Thus, none of Phoenix's allegations satisfy the "independently tortious" element of the claim.

### a.     Statements that Phoenix is Operated by a Felon Are True

As the Court can judicially notice, Ferrari pleaded guilty to a felony.[22]  Regardless of his satisfaction of a plea deal and the subsequent dismissal of the charges to which he pleaded guilty, Ferrari, currently Phoenix's Vice President of Engineering,[23] is factually a felon.  *Martin Corp*., 777 F.3d at 551 ("The [Erasure] statute" by which former arrest records are deemed to have never occurred "creates legal fictions, but it does not and cannot undo historical facts or convert once-true facts into falsehoods."); *Farach v. Rivero*, 305 So. 3d 54, 57 (Fla. Dist. Ct. App. 2019) (sealing order may permit the subject of the criminal history to lawfully deny the crimes included in the sealed record, but does not "alter the metaphysical truth of his past, nor does it impose a regime of silence on those who know the truth.") (quoting *Kenny*, 205 N.J. at 300)); *Kenny*, 205 N.J. at 300, ("The [expungement] statute does not, however, impose any duty on members of the public who are aware of the conviction to pretend that it does not exist. . . . [T]he statute authorizes certain persons to misrepresent their own past. It does not make that representation true.")).  Thus, to the

---

[22] Texas Federal Case, Dkt. 10, 14 and 31.

[23] The Court may judicially notice (1) Phoenix's website which reflects Ferrari's current role: https://phxcapitalgroup.com/blog/team/adam-ferrari/?gad=1&gclid=CjwKCAiA3aeqBhBzEiwAxFiOBs_lcLqeTQT-e7Mo5EtrXlFa1H4AAmPrFjwXEb1_SGjwASOrfziQwBoCAz8QAvD_BwE; and (2) its SEC filings, including its annual report, which reflect Ferrari's title, as well as additional information regarding his operational control: "Daniel Ferrari and Charlene Ferrari each own 50% of the voting membership interests in and are the managers of Lion of Judah, LLC, which owns 57.58% of the Company. . .   Adam Ferrari is the ***economic interest owner of Lion of Judah, LLC . . .***"   https://www.sec.gov/Archives/edgar/data/1818643/000165495423005486/pcgh_1k.htm   (emphasis added).

extent Phoenix relies on defamation regarding Ferrari's status as a felon, it cannot rely on defamation or deceit to satisfy the independently tortious or wrongful element. *See Williams*, 26 F. Supp. 3d at 631 ("Whether guilt is confessed or guilt is pled, the reputation-damaging fact is being guilty of the crime.").

Similarly, to the extent Phoenix relies on defamation premised on Incline's alleged assertion that Phoenix "was operated by criminals," ¶ 22, Phoenix fails to plead that either aspect of the statement, that Ferrari is a criminal and that he operates Phoenix, is false. Moreover, as pleaded, Francis's statements about Ferrari's control over Phoenix are at best opinion ("for someone to consume those and still believe Adam is not actually running Phoenix…"), and thus not actionable as defamation.  *Others First, Inc.* 829 F.3d at 580 ("Statements of opinion are protected by the First Amendment, and, even if made maliciously or insincerely, cannot be actionable.");  *see also Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*, 945 F. Supp. 220, 224 (D. Kan. 1996) ("Expressions of opinion and peaceful means of protest are protected from actions alleging interference with business.") (citing *N.A.A.C.P. v. Claiborne Hardware Co*., 458 U.S. 886 (1982)).  The statements Phoenix pleads in support of its claims fail to satisfy the independently tortious element of this claim.

> **b.  Phoenix's Contentions Premised on any Other Purportedly False or Defamatory Statement are Conclusory**

To the extent that Phoenix relies on any other alleged false or defamatory statement, it fails to plead it with specificity.   Accordingly, its conclusory allegations related to such statements also fail to satisfy the "independently tortious" element of the claim. *See Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *6 (N.D. Tex. Dec. 29, 2015) (dismissing defamation claim where the plaintiff failed to allege "exactly when, where, and to whom the statements were published"); *Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, No. H-

09-1574, 2010 WL 2757523, at *3 (S.D. Tex. July 13, 2010) (dismissing defamation claim where plaintiff "failed to plead any facts in support of the publication element of his claims"); *see also Combined Aircraft Ownership, LLC v. Learjet, Inc.*, No. 3:22-CV-202, 2023 WL 4107036, at *4 (D.N.D. June 21, 2023) (dismissing tortious interference claim where only conclusory allegations supported independently tortious or unlawful element).

### 3. Phoenix Fails to Plead Facts Regarding a Reasonable Business Expectancy Regarding "Mineral Owners"

Phoenix provides no factual support for any contention that it possessed a reasonable expectation of a business expectancy with respect to any mineral owners.   It provides no facts regarding any offers or negotiations between it and anyone else, nor any other fact that would support a reasonable expectancy.   Even with respect to the "Bakke Family," Phoenix pleads *competing* offers by Incline and Phoenix framed against its admission that Incline was able to close faster.  Dkt. 1, ¶ 20-21.  The ability to pay a higher dollar amount does not equate to a business expectancy with any mineral owner who may or may not choose to sell to Phoenix.  The Complaint is wholly devoid of any fact that suggests Phoenix possessed a reasonable business expectancy regarding any mineral owner.  *See Cantu v. Guerra & Moore, Ltd. LLP*, 328 S.W.3d 1, 7 (Tex. App.—San Antonio 2009, no pet.) (mere negotiations insufficient to satisfy reasonable probability element); *Massey v. Tandy Corp.*, 987 F.2d 1307, 1310 (8th Cir. 1993) (Under Missouri law, a "regular course of similar prior dealings [with the same counter-party] may suggest a valid business expectancy," but absent same, no reasonable expectancy existed).

Because Phoenix fails to plead factual support for the "independently tortious" element of this claim, and because it fails to plead factual support for the "reasonable expectation" element with respect to "mineral owners," under either Texas or North Dakota law, Phoenix's claim lacks plausibility.

**F.      Phoenix's Unfair Competition Claim Lacks Plausibility**

**1.      Under Texas Law, "Unfair Competition" Requires an Underlying Tort**

In Texas, "unfair competition" has no independent existence as a claim and depends on an underlying tort. *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 788 (Tex. App.—Dallas 2015, no pet.) ("[U]nfair competition is a derivative tort that requires a viable underlying tort or other illegal conduct for liability to exist."); *Schoellkopf v. Pledger,* 778 S.W.2d 897, 905 (Tex. App.—Dallas 1989, writ denied) ("Without some finding of an independent substantive tort or other illegal conduct, liability cannot be premised on the tort of 'unfair competition.'").  As discussed above, because Phoenix failed to plausibly plead a viable underlying tort, its unfair competition claim also lacks plausibility.

**2.      Under North Dakota Law, "Unfair Competition" Requires a Trademark**

Phoenix pleads that by "unfairly diverting a loan from a competitor and making false statements of fact to sellers and lessors about Phoenix" Incline engaged in unfair competition.  Dkt. 1 at ¶ 79. North Dakota law appears to recognize unfair competition as a claim but premised only on the same elements provided by the Lanham Act.  *See Burris Carpet Plus, Inc. v. Burris*, 2010 ND 118, ¶ 40, 785 N.W.2d 164, 178.  Thus, a plausible unfair competition claim, under either North Dakota's common law (upon which Phoenix relies) or the Lanham Act, "require[s] the plaintiff to have a valid and protectable mark." *N. Bottling Co., Inc. v. PepsiCo, Inc.*, 427 F. Supp. 3d 1106, 1122 (D.N.D. 2019), *aff'd*, 5 F.4th 917 (8th Cir. 2021) (citing *Burris Carpet Plus, Inc.*)). Phoenix pleads no such mark and thus its unfair competition claim lacks plausibility as a matter of law, and must be dismissed with prejudice.

**G.      Phoenix's Unjust Enrichment Claim Lacks Plausibility**

Under Texas law, a plausible unjust enrichment claim exists when "the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be

unconscionable to retain." *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied).  Further, as a derivative tort, to satisfy Texas law the plaintiff must plead either illegal conduct, or conduct that is "wrongful, unethical, or otherwise unjust."  *Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.*, 965 F.3d 365, 383 (5th Cir. 2020).

Similarly, under North Dakota law, "[t]he essential element in recovering under the theory [of unjust enrichment] is the receipt of a benefit by the defendant *from the plaintiff* which would be inequitable to retain without paying for its value."  *KLE Const., LLC v. Twalker Dev., LLC*, 2016 ND 229, ¶ 6, 887 N.W.2d 536, 538 (emphasis added); *Zuger v. N. Dakota Ins. Guar. Ass'n*, 494 N.W.2d 135, 138 (N.D. 1992).

The pleaded facts here do not fit the legal premise of this claim, since if Incline received any benefits at all, Phoenix pleads that such enrichment resulted from valid contracts between Incline and mineral sellers who chose to sell to Incline based on its ability to close more quickly than Phoenix.  Phoenix pleads no factual basis for any enrichment received by Incline from Phoenix, nor indeed from FIBT or anyone else.  And as discussed at length above, Phoenix fails to plead facts supporting a viable underlying tort.  Accordingly, the claim should be dismissed.  *See Kraft v. Essentia Health, Innovis Health, LLC*, 600 F. Supp. 3d 965, 975 (D.N.D. 2021) (dismissing unjust enrichment claim in the absence of allegations that defendant received benefits from the plaintiff).

## IV.    <u>CONCLUSION</u>

This Court need not decide this motion but instead as demonstrated in the concurrently filed Abstention Motion, should dismiss Phoenix's repetitive, redundant, and defective lawsuit in favor of the related Texas State Case.   Alternatively, the Court should transfer this case to the

United States District for the Northern District of Texas for consolidation with the Texas Federal Case.  Upon consolidation, Incline will re-urge this motion, in addition to seeking other relief.

If the Court declines to dismiss based on abstention or transfer based on 28 U.S.C. § 1404(a), the Court should dismiss Phoenix's claims because (1) they are grounded in fraud but lack Rule 9(b) specificity; (2) no wrongful or independently tortious conduct is plausibly pleaded to support any of the claims; (3) privilege and/or justification evident on the face of the Complaint or which may be judicially noticed bars the tortious interference claims; (4) Phoenix fails to plausibly allege a breach of the FIBT contract; (4) Phoenix failed to plead facts supporting any reasonable business expectancy in support of Count Two; (5) Phoenix failed to plead facts suggesting any enrichment by Incline; and (6) its unfair competition claim is legally implausible.

WHEREFORE, PREMISES CONSIDERED, Defendant Incline Energy Partners L.P. requests dismissal of all of Plaintiff's claims, and all such other relief to which it may show itself entitled.

Respectfully submitted,

By:   */s/ Charlene C. Koonce*            
    Charlene C. Koonce
     Texas Bar No. 11672850
      charlene@brownfoxlaw.com

    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

    Joshua A. Swanson
    North Dakota Bar No. 06788

    VOGEL LAW FIRM
    218 NP Avenue
    PO Box 1389
    Fargo, ND 58107-1389
    701.237.6983
    jswanson@vogellaw.com

    *Attorneys for Defendant Incline Energy*
    *Partners, L.P.*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies that counsel for Incline conferred with counsel for Plaintiff and this Motion is opposed.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rule 5(d)(1)(B) of the Federal Rules of Civil Procedure, as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.