# EXHIBIT A-1

FORM NO. 353-3 - CITATION

THE STATE OF TEXAS

ESERVE

CITATION

DC-22-06350

To:    WILLIAM FRANCIS
       15800 SPECTRUM DRIVE, APT. #1432
       ADDISON, TEXAS

PHOENIX CAPITAL GROUP
HOLDINGS, LLC
vs.
WILLIAM FRANCIS, et al

ISSUED THIS
17th day of June, 2022

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the 116th District Court at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being PHOENIX CAPITAL GROUP HOLDINGS, LLC

Filed in said Court 15th day of June, 2022 against

WILLIAM FRANCIS AND INCLINE ENERGY PARTNERS, L.P.

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

For Suit, said suit being numbered DC-22-06350, the nature of which demand is as follows:
Suit on DEFAMATION etc. as shown on said petition, a copy of which accompanies this citation.
If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 17th day of June, 2022.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By: ANGELA CONEJO, Deputy

Attorney for Plaintiff
JAMES CREWSE
CREWSE LAW FIRM, PLLC
5546 GOODWIN AVE.
DALLAS, TEXAS 75206
214-394-2856
Jcrewse@crewselawfirm.com

By _____ , Deputy    Skti5°+'    s.kz⁴
       ANGELA CONEJ

OALLAS COUNTY
;SERVICE FEES
NOT PAID

# OFFICER'S  RETURN

Case No. : DC-22-06350

Court No.116th District Court

Style: PHOENIX CAPITAL GROUP HOLDINGS, LLC

vs.

WILLIAM FRANCIS, et al

Came to hand on the                    day of                    , 20                    o'clock                    , at                    o'clock                    .M. Executed at

within the County of                    at                    o'clock                    .M. on the                    day of

20                    , by delivering to the within named

each in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was                    miles and my fees are as follows:   To certify which witness my hand.

For serving  Citation

For mileage                                        of                    County,

For Notary                                        By                                        Deputy

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said                    before me this                    day of                    , 20

to certify which witness my hand and seal of office.

Notary Public                                        County

FILED
6/15/2022 12:35 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Connie Jones DEPUTY

ESERVE 2

DC-22-06350

CAUSE NO.

| | |
|---|---|
| PHOENIX CAPITAL GROUP HOLDINGS, LLC, | IN THE DISTRICT COURT |
| Plaintiff, | 116th |
| v. | JUDICIAL DISTRICT |
| WILLIAM FRANCIS and INCLINE ENERGY PARTNERS, L.P., | |
| Defendants. | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff, Phoenix Capital Group Holdings, LLC ("Plaintiff" or "Phoenix"), by counsel, submits the following Original Petition against Defendants, William Francis ("Mr. Francis") and Incline Energy Partners, L.P. ("Incline") (collectively, "Defendants").

### I.
### NATURE OF ACTION

1.    Before this Court comes Phoenix Capital Group Holdings, LLC, a Colorado-based company specializing in the mineral rights industry. For years, Phoenix has suffered a persistent campaign of defamation and tortious interference at the hands of William Francis, the managing partner of Incline, a competitor to Phoenix in the mineral rights industry. Mr. Francis, upset at the direct competition presented by Phoenix's business, set out to harm Phoenix at all costs and with no regard for the truth. Mr. Francis has published false and defamatory statements to land owners, oil companies, and financial institutions, posing significant damage to Phoenix's business and operations. Phoenix cannot let Mr. Francis and Incline's actions continue without redress and, accordingly, must seek this Court's intervention to bring a stop to Defendants' tortious conduct and to penalize them to the fullest extent permissible under law.

## II.
## RULE 47(c) STATEMENT & DISCOVERY LEVEL

2.      Plaintiff seeks monetary relief over $1,000,000.

3.      Plaintiff requests this case be conducted under a Level 2 Discovery Control Plan in accordance with Texas Rules of Civil Procedure 190.3.

## III.
## PARTIES

2.      Plaintiff is a Delaware limited liability company with its headquarters located in Littleton, Colorado.

3.      Defendant William Francis is an individual who resides in Dallas County and may be served with process at his residence located at 15800 Spectrum Drive, Apt 1432, Addison, Texas.

4.      Defendant Incline Energy Partners, L.P. is a Texas limited partnership with its principal place of business in Dallas County, and may be served through its registered agent, Andrew K. Louis, at such agent's designated address on record with the Texas Secretary of State, 5019 N. Central Expwy, Dallas, Texas 75205, or wherever he may be found.

## IV.
## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action because damages sought are within the jurisdictional limits of this Court.  Venue is proper in this Court pursuant to Texas Civil Practice and Remedies Code § 15.022(1)-(3) as both Defendants reside in and have their principal place of business in Dallas County, and all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County.

PLAINTIFF'S ORIGINAL PETITION                                                          Page 2

V.
BACKGROUND

Phoenix's Growth

6.  Phoenix was founded in 2019 and is currently led by Lindsey Wilson, Phoenix's Manager and Chief Operating Officer.

7.  Phoenix brought together industry experts with decades of experience in their fields to build an industry leader in mineral rights.  One of those experts with whom Phoenix consulted regularly was Adam Ferrari ("Mr. Ferrari"), an individual with years of experience and expertise in the mineral rights industry.

8.  At the time Phoenix was founded, the industry was dominated by Incline and very few firms were able to compete.

9.  By deploying its proprietary technology and decades of industry experience, Phoenix was able to successfully compete with Incline.

10.  Further, Phoenix was able to outbid Incline directly on acquisitions and often came out on top when competing for the same investment opportunity.

II.  Phoenix's success was met with hostility from Incline, specifically from Mr. Francis, Incline's Managing Partner.

Francis's Campaign Against Phoenix

12.  Incline operates in the oil and gas industry, where it operates and acquires mineral rights, and is a direct competitor to Plaintiff in the mineral rights space.  Mr. Francis is currently a managing partner of Incline.

13.  In response to Phoenix's success, Mr. Francis and Incline set out on an intentional, willful, and malicious campaign against Phoenix with the intention of damaging Phoenix's reputation and ability to compete in the marketplace.

14.     Incline is liable to Phoenix through the theory of respondeat superior and/or ratification of Mr. Francis's tortious conduct.

15.     Mr. Francis focused on Phoenix's work with Mr. Ferrari, an individual with whom Mr. Francis had a long and contentious history.

16.     Mr. Francis and Mr. Ferrari are no strangers to each other, having competed in the mineral rights industry for years.

17.     As a response to Mr. Ferrari's competition, Mr. Francis has always engaged in sharp business practices against Ferrari and his businesses, causing numerous lawsuits to be filed against Mr. Ferrari and those companies over the years.

18.     Mr. Francis often tortiously interfered with Mr. Ferrari's business efforts – sending defamatory packets to Mr. Ferrari's business associates to try and derail Mr. Ferrari's transactions.

19.     For example, on November 27, 2018, Bryan Hymer, an employee of Incline, sent to a landowner a link to an anonymous website disparaging Mr. Ferrari and his company, Ferrari Energy.

20.     With respect to Phoenix, Mr. Francis latched onto the relationship between Phoenix's executives and Mr. Ferrari, an individual with whom Phoenix's executives had previously partnered.

21.     Mr. Francis began emailing and sending anonymous packets to mineral rights sellers and industry executives, claiming that Mr. Ferrari was Phoenix's Chief Executive Officer and a convicted felon.

22.     Importantly, however, Mr. Ferrari is not an owner of Phoenix and has never been an owner of Phoenix.

PLAINTIFF'S ORIGINAL PETITION                                                    Page 4

23.     Further, Mr. Ferrari has never held ally management position with Phoenix and has never had authority to bind Phoenix.

24.     Instead, Mr. Ferrari provided consulting services to Phoenix, providing his decades of experience in the industry.

25.     As Phoenix became more successful in acquiring mineral rights and other investments, Mr. Francis became incensed and set out on a campaign to intentionally interfere with and damage Phoenix's business and reputation.

26.     Upon information and belief, Mr. Francis set up a number of websites wherein he published information about various lawsuits filed against Mr. Ferrari and companies with which he was affiliated, including alleging that Mr. Ferrari was a convicted felon, which was and is false.

27.     Further, and upon information and belief, Mr. Francis conspired with others, including at least one reporter at a Colorado newspaper, specifically Joe Moylan of the Greeley Tribune, to publish false statements to third parties and to damage Phoenix's business.

28.     Upon information and belief, Mr. Francis set up anonymous email accounts and sent, or had sent, packets of information to various industry players, including one email on January 7, 2021 to executives from Hess, ExxonMobil, and other leading oil and gas operators, alleging, among other things, that Phoenix was violating SEC laws and was owned, financed, and managed by a convicted felon.  A true and correct copy of the January 7, 2021 e-mail is attached as Exhibit A.

29.     Hess and ExxonMobil, of course, are large multinational energy corporations.  As a result of its work in the mineral rights industry, Phoenix regularly conducts business with Hess, ExxonMobil, and others copied on the email.  In fact, Phoenix became aware of the anonymous

email to ExxonMobil when it was forwarded to one of Phoenix's employees by an ExxonMobil employee with whom Phoenix regularly interfaces.

30.     Importantly, the anonymous January 7, 2021 e-mail forwarded the same link, "lawsuitsoilandgas.com" as the November 27, 2018 e-mail from Bryan Hymer, an Incline employee.

31.     Further, on June 17, 2021, Mr. Francis emailed Ms. Crystal Taylor, an individual with whom Phoenix was in the process of closing a real estate transaction.  A true and correct copy of the e-mail thread is attached as Exhibit B.

32.     In the June 17, 2021, email, Mr. Francis stated: "I would love nothing more than to defend my company's track record versus the misdeeds that Phoenix/Ferrari has performed over the years.  Namely, the fact that their CEO was arrested and convicted for forging a mineral owners signature in order to defraud her of hundreds of thousands of dollars." (Ex. B, at 1.)

33.     Mr. Ferrari is not and never was Phoenix's CEO, a fact of which Mr. Francis has always been aware.

34.     Further, at the time of Mr. Francis's statement, Mr. Ferrari had not been, and has never been, convicted of any crimes.  Mr. Francis was also aware that Mr. Ferrari had never been convicted of any crimes.

35.     In February and March of 2022, Mr. Francis contacted Dalmore Capital, Phoenix's broker-dealer, to disparage Phoenix, to disparage Mr. Ferrari, and try to derail Phoenix's latest capital raise.

36.     In early May of 2022, Phoenix was moving to close on a $50,000,000 loan with its primary bank, First International Bank and Trust ("FIBT"), which closing was derailed, upon information and belief, by Francis's conduct.

37.     On May 11, 2022, Phoenix received a call from FIBT, informing Phoenix that FIBT was backing out of the transaction.

38.     Phoenix later learned that someone had sent FIBT an anonymous packet regarding Mr. Ferrari, which caused FIBT to back out of the transaction.

39.     Upon information and belief, Mr. Francis intentionally interfered with the transaction by defaming Phoenix.

40.     Mr. Francis and Incline have acted with malicious intent and with the sole goal of damaging Phoenix in its reputation, trade, and business.

## VI.
## CONDITIONS PRECEDENT

41.     All paragraphs in this pleading are reasserted and incorporated by reference

42.     Any and all conditions precedent, including as it relates to Plaintiff's filing of this lawsuit, recovery against Defendant, and right to all relief requested herein have occurred, been fulfilled, fully performed, and/or been waived or excused.

## VII.
## CAUSES OF ACTION

COUNT 1:     DEFAMATION, LIBEL, & SLANDER / DEFAMATION, LIBEL & SLANDER PER SE

43.     Plaintiff re-pleads and incorporates the preceding paragraphs set forth above.

44.     Plaintiff is an entity engaged in, among other things, the business of purchasing, owning, and selling mineral rights.  Defendants defamed Plaintiff by intentionally and knowingly publishing falsehoods to third parties.  Defendants knew at the time of the publications that the statements were false and damaging to Plaintiffs business and reputation.

45.     Indeed, Defendants published the defamatory statements with malice and with the intent to harm Plaintiffs business and reputation.  Plaintiff's business and reputation has been harmed by Defendants' defamatory statements.

COUNT 2:   BUSINESS DISPARAGEMENT

46.   Plaintiff re-pleads and incorporates the preceding paragraphs set forth above.

47.   Plaintiff is an entity engaged in, among other things, the business of purchasing, owning, and selling mineral rights.   Defendants published disparaging words about Plaintiff's economic interests, specifically including but not necessarily limited to, the character of Plaintiff's business.   The words were false, and Defendants published the words with malice, and without privilege, and the publication caused Plaintiff to suffer damages, specifically including special damages.

COUNT 3:   TORTIOUS INTERFERENCE WITH CONTRACT

48.   Plaintiff re-pleads and incorporates the preceding paragraphs set forth above.

49.   Plaintiff is an entity engaged in, among other things, the business of purchasing, owning, and selling mineral rights.   Plaintiff engaged in business with a variety of other companies in the mineral rights industry, as well as with landowners and financial institutions, with whom Plaintiff had one or more valid contracts.   Defendants had actual knowledge of the Plaintiff's contracts and Plaintiff's interests therein, or had knowledge of facts and circumstances that would lead a reasonable person to believe there was a contract in which Plaintiff had an interest.

50.   Defendants willfully and intentionally interfered with Plaintiff's contracts and business relations when they published defamatory statements with the intent to harm Plaintiff's business.   Defendants' interference proximately caused injury to Plaintiff, and Plaintiff has incurred actual damage or loss.

COUNT 4:   TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT/RELATIONS

51.   Plaintiff re-pleads and incorporates the preceding paragraphs set forth above.

52.   Plaintiff is an entity engaged in, among other things, the business of purchasing, owning, and selling mineral rights.   There was a reasonable probability that Plaintiff would have

entered into one or more business relationships and/or contracts with one or more third persons, but Defendants intentionally interfered with the relationships by engaging in conduct that was independently tortious or unlawful.  Defendants' interference proximately caused injury to Plaintiff, and Plaintiff suffered actual damage or loss.

COUNT 5:      UNFAIR COMPETITION

     53.    Plaintiff re-pleads and incorporates the preceding paragraphs set forth above.

     54.    The foregoing conduct of Defendants constitutes an unfair method of competition. As a consequence of the foregoing, Plaintiff has suffered injury and damages.

COUNT 6:      CIVIL CONSPIRACY

     55.    Plaintiff re-pleads and incorporates the preceding paragraphs set forth above.

     56.    Defendants conspired with others, including a reporter from a Colorado newspaper, to publish false statements regarding Plaintiff.

     57.    Defendants conspired with others with the intent to damage Plaintiff's business.

     58.    Plaintiff's business was damaged as a result of Defendants' conspiracy.

VIII.
EXEMPLARY DAMAGES

     59.    Plaintiff re-pleads and incorporates the preceding paragraphs set forth above.

     60.    Defendants' conduct complained of herein was intentional, with malice, with conscious indifference to Plaintiff's rights, and with a specific intent to cause serious harm and substantial injury to Plaintiff, and Defendants were consciously indifferent to the harm.  Based on the foregoing, Plaintiff is entitled to and seeks to recover exemplary damages against Defendants in an amount to be determined by the trier of fact.

IX.

PRAYER

WHEREFORE, Phoenix Capital Group Holdings, LLC, by counsel, respectfully requests

that the Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally,

which awards Plaintiff the following:

a.       actual, consequential, compensatory and/or special damages in the amount of
$50,000,000.00;

b.       exemplary damages in the amount of $50,000,000.00 and/or the maximum amount
permitted by law;

c.       all costs of court;

d.       pre-judgment interest at the highest rate permitted by law;

e.       post-judgment interest on all amounts awarded at the highest rate permitted by law;
and

f.       all other and further relief, general and special, and legal and equitable, that Plaintiff
may be entitled to receive, at law or in equity.

DATED:  June 15, 2022            Respectfully submitted,

 /s/ James Crewse
JAMES CREWSE
State Bar No. 24045722
icrewse@crewselawfinn.com
CREWSE LAW FIRM, PLLC
5546 Goodwin Ave.
Dallas, TX 75206
Phone: (214) 394-2856
Fax: (253) 252-8776

- and -

VERNON E. INGE, JR. (pro hac vice application
forthcoming)
vinge@wtplaw.com
PATRICK D. HOUSTON (pro hac vice application
forthcoming)
phouston®wtplaw.com
WHITEFORD, TAYLOR & PRESTON LLP
Two James Center
1021 East Cary Street, Suite 1700
Richmond, Virginia 23219

Phone:  (804) 977-3301
Fax:  (804) 977-3291

*ATTORNEYS FOR PHOENIX CAPITAL*
*GROUP HOLDINGS, LLC*

# EXHIBIT A

EXHIBIT A

From: Mchenry, Stacey Ohwen <stacey.mchenry@exxonmobil.com>
Sent: Thursday, January 7, 2021 11:50 AM
To: Curtis Allen <CA@phxcapitalgroup.com>
Subject: FW: Adam Ferrari - CEO of Phoenix Capital Group Holdings, LLC

I opened this thinking it was from you, and was wondering if you have any idea who is sending this out to oil companies?

Thank You,
Stacey McHenry | Sr. Title Analyst- Central
EXXONMOBIL-Land Administration UOG    LW-03-5326
Mail:  22777 Springwoods Village Pkwy- LOC 116 | Spring, TX 77389
Direct:  346.335.0400 | Personal Cell 713.498.2532 | Oildex Log In [secure.oildexdx.com]

From: Concerned Mineral Owner [mailto:concernedbakkenmineralowner@gmaiL.com]
Sent: Thursday, January 7, 2021 11:28 AM
To: ask@hess.com; integritv@hess.com
Subject: Adam Ferrari - CEO of Phoenix Capital Group Holdings, LLC

External Email - Think Before You Click

To Whom It May Concern:

I was extremely disappointed to see, via some backup (Ex1) that Phoenix Capital Group Holdings, LLC ("Phoenix") provided through an auction at Enerp..yNet fenergynet.coml, that Hess Corporation was essentially conducting pro bono due diligence for a mineral acquisition Phoenix was pursuing but had not closed on yet. It appears that Phoenix was utilizing Hess' labor and internal proprietary title databases to check ownership on a mineral owner on or before December 2, 2020, and would hold off on closing their acquisition until Hess blessed and signed off on title via an email on Friday December 4, 2020 at 7:05 AM. After obtaining Hess' due diligence on their mineral acquisition, Phoenix would then electronically file their Mineral and Royalty Deed

shortly thereafter the same day at 2:56 PM (Ex2). Within 3 business days, on December 9, 2020 this interest would be setup to be auctioned on EnergyNet platform, with final bids due at 2:55 today.

Phoenix did this in a manner in which it appears to exploit the spread of prices that they knew existed between the price they got Ms. Western under agreement for and what buyers on EnergyNet would pay, while seemingly not taking on any pricing or title risk and certainly not informing Ms. Western of their intentions to start the process of having this interest put up for auction prior to even closing on her transaction. One could speculate with the facts at hand, and reviewing their PSA templates, that Phoenix went through this timeline in a manner in which the auction would close and they would have funds from that sales prior to even having tendered Ms. Western the closing price promised in their PSA. I've provided a copy of one of their proposed agreements (Ex3) which provides that Phoenix must take ownership of the asset prior to closing and that they don't have to close until 45 business days after they receive the executed PSA & Mineral Deed. As the mineral deed between Ms. Western and Phoenix was executed and notarized on December 1, 2020, if they negotiated their typical PSA, that would mean that Phoenix wouldn't need to even pay Ms. Western until January 31, 2021.

Hess providing ownership confirmation to its mineral owners in this type of transparent fashion should be applauded within our industry. However, that doesn't appear to be what happened and I think anyone reviewing this email would agree that providing this kind of proprietary data should not extend to mineral brokers who are trying to profit off risk free flipping of mineral owners property. Further more and most disturbing, is the mineral broker being granted preferential treatment is owned, financed and managed by a convicted criminal named Adam Ferrari (Ex4 & Ex5). Mr. Ferrari was arrested in 2019 after he had cut off the signature and notary block of a mineral deed and cut and pasted it onto a backdated mineral deed into his company in order to defraud said mineral owner out of >$250k.

Phoenix obviously doesn't promote the fact that their CEO is in fact Mr. Ferrari for obvious purposes, most importantly being the fact that they're clearly violating SEC laws, which disallows any company to utilize EnergyNet's online marketplace if their owners or management have been convicted of crimes that "(ii) are based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct, issued within ten years;", thus assisting them in their scheme to profit off unsuspecting mineral owners. As such, I'll address several points I feel prove beyond a reasonable doubt that Mr. Ferrari is behind Phoenix:

-Mr. Ferrari has a Phoenix email (Ex6) and is actively being listed in association with the company alongside the rest of their employees contact information on 3rd party websites not associated with Phoenix.
-I've never heard of a company that lists and actively promotes who their COO, CTO & CFO are, but omits who the CEO of the company is.
-First hand accounts from Phoenix's counterparties have specifically stated that their point of contact in working with Phoenix was Mr. Ferrari.
-Phoenix was incorporated in Delaware on 4/16/2019 (Ex7) two months after Ferrari was arrested and almost immediately after he was kicked out of his company by his board of directors shortly thereafter.
-Mr. Ferrari lists his address with the Colorado Secretary of State (Ex8) as being in Playa Vista, CA, which is adjacent to Phoenix offices in a city in which I don't think anyone can name another active mineral and royalty acquisition company.
-Phoenix's "founding member" (Ex9) alongside Mr. Ferrari, as well as Tom Kruk (Ex10), Sean Goodnight (Ex11) and Adam Josephson (Ex12) all worked for Mr. Ferrari prior to being let go alongside Mr. Ferrari in the purge that occurred after his arrest, and are all now gainfully employed at Phoenix under Mr. Ferrari's direction.

I mention all of this, as I don't believe it's widely known in the Bakken/Williston Basin community as to Mr. Ferrari's association with Phoenix or their wider employee base's lack luster track record in conducting themselves in an ethical manner. Also, I feel compelled to bring this particular incident to light so that Phoenix is not being assisted in promulgating the same business tactics that Mr. Ferrari utilized in order to exploit the

EXHIBIT A

mineral ownership community in Weld County Colorado starting in 2017 up until his arrest in 2019 while running Ferrari Energy/Wolfhawk Energy Holdings LLC.

In particular, Phoenix's predecessor entity's standard business practice in Weld County was to get someone under agreement in a manner in which the owner signed a PSA & Mineral Deed at the same time prior to closing. They would then file the mineral deed but hold off on paying or closing on that mineral owner until they had been able to sell the interest or the mineral owner started to complain. This ultimately led to Phoenix's predecessor entity getting sued 9 times within the span of just 9 months to a point that someone would set up a website to document all of these misdeeds flawsuitsoilandgas.com]. Phoenix's predecessor would ultimately not win a single one of these lawsuits. In fact, over the span of just two years between September 2017 and 2019, Phoenix's predecessor would have to file 59 reconveyances (Ex13) to the counterparties they never paid, but had already filed a mineral deed of record in Weld County, with their misconduct and behavior being well documented in the local press (Ex14).

Clearly I don't believe anyone at Hess or the organization in general has done anything wrong here, but were merely attempting to expedite your operations. So, at the very least, I would encourage you and the rest of the operator community in the Bakken to stop providing Phoenix/Ferrari with proprietary information without having first obtained a filed copy of a mineral deed. Further, and I believe more importantly, I would also highly recommend that additional oversight be placed into whether or not Phoenix has actually tendered full payment to their mineral owners they're transacting with prior to formalizing any transfers they might be requesting and certainly before releasing any funds.

Thank you for your time,


Concerned Mineral Owner

3

EXHIBIT B

# Mr

From: Adam Ferrari <AF@phxcapitalgroup.com>
Date: Thursday, June 24, 2021 at 9:18 AM
To: Curtis Allen <CA@phxcapitalgroup.com>, Lindsey Wilson <LW@phxcapitalgroup.com>
Subject: Fw: Krystal family oil holdings


From: William Francis <william@inclinelp.com>
Sent: Thursday, June 17, 2021 2:59 PM
To: Crystal Taylor <cat44771@yahoo.com>; Adam Ferrari <AF@phxcapitalgroup.com>
Subject: Re: Krystal family oil holdings

You citing Phoenix/Ferrari as the other offer/group that is telling you that we low balled you is all the information I need to know. We made your aunt aware of those permits when she had called us and not the other way around.

I would love nothing more than to defend my company's track record versus the misdeeds that Phoenix/Ferrari has peformed over the years. Namely, the fact that their CEO was arrested and convicted for forging a mineral owners signature in order to defraud her of hundreds of thousands of dollars.

https://www.denverpost.com/2019/02/19/denver-ceo-ferrari-oil-gas-weld-fraud-charges/ fdenverpost.com]
https://www.greeleytribune.com/2019/08/08/adam-ferrari-pleads-guilty-to-felony-theft-in-denver-district-court-receives-deferred-sentence/ fgreeleytribune.coml

Here's another link that details Sean Goodnight track record, who you're working with:
https://www.greeleytribune.com/2019/02/24/weld-district-court-records-provide-insights-into-adam-ferraris-business-practices/ fgreeleytribune.coml

1

EXHIBIT B

Regards,


William Francis
Managing Partner
Incline Energy Partners, LP
(214) 274-3800
https://inclinelp.com/ finclinelp.comi


On Thu, Jun 17, 2021 at 3:59 PM Crystal Taylor <cat44771@yahoo.com> wrote:

Hi again William,

I have spent every spare minute these past days researching, calling, and investigating these mineral oil interests and the oil market in general.

Your claim that Incline has acquired 3 times more business in the Williston Basin area than any other company in the past 3 years doesn't automatically equate to your company never giving low ball offers as you proposed in this last email. That could mean any number of things....you could be marketing more aggressively than your competitors, you could be buying up undervalued mineral deeds from lots of owners who have no idea what they're doing in the selling marketplace like the case with my aunt, etc. That's great that your business is growing so rapidly but your argument here about never giving low ball offers doesn't hold weight. I don't think negatively of you as a person, I'm just doing what is fair and right in this case based on personal as well as professional opinions and appraisals.

In reference to the professional opinions we've received since my brother and I stepped in, they are all from reputable and highly experienced mineral oil brokers who know the market well. The first opinion/appraisal was from Brian Wolf Oil and Gas Properties, who has been in business since 1992 and has brokered over $1 billion in mineral oil transactions. The other professional opinions/appraisals have been from US Mineral Exchange, who have been in business for a decade, Vintage Oil and Gas, and Community Minerals, which has over 50 years in this business.

They have all agreed that this was a low ball offer and I'll explain why. As I'm sure you are aware, 10-12 new drilling permits have been issued on and around the land in this particular contract with Incline (4.8 net mineral acres in 147N-96W sections 23 & 26). That greatly increases the value of these oil interests and these permits were issued before May 19th.

We do very much appreciate your offer to make things right by honoring any other official offers during that time period. Sheila has been searching through her emails for other offers on this exact piece of land and she's getting confused again by all the numbers and details of dozens of mineral oil properties we own in several different states. She thinks she began putting our various properties up for sale in March or April of this year so there would be nothing before that time. But I do have an official offer in my inbox that she emailed to me back in May for the same exact property. They have the 4.8 net mineral acres divided up into sections 23 and 26, with an offer of $27,615.56 for 23 and $55,231.14 for 26. So the total offer for the same 4.8 net mineral acres was $82,846.70. They also wanted to buy other holdings we have in Dunn County, which is included in their offer but it's all separated out into distinct holdings and offers as you will see in the documents. She was in contact with them before May 19th but did not receive the official documentation until May 24th and then they sent finalized documents on May 31st and June 1st. My research and conversations with professionals in this field show that the price of oil fluctuated very little between May 19th and June 1st and absolutely does not account for the difference in offers....Incline at $45,000 and Phoenix at $82,846.70 for the same exact mineral oil holdings.

I will forward you Phoenix's official offer in a separate email.

Thank you for your consideration,
Crystal

EXHIBIT B

Automated Certificate of eService
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Crewse on behalf of James Crewse
Bar No. 24045722
jcrewse@crewselawfirm.com
Envelope ID: 65465651
Status as of 6/17/2022 7:19 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Crewse | | jcrewse@crewselawfirm.com | 6/15/2022 12:35:44 PM | SENT |

Associated Case Party: Phoenix Capital Group Holdings, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Crewse | | jcrewse@crewselawfirm.com | 6/15/2022 12:35:44 PM | SENT |
| Vernon E.Inge | | vinge@wtplaw.com | 6/15/2022 12:35:44 PM | SENT |
| Patrick D.Houston | | phouston@wtplaw.com | 6/15/2022 12:35:44 PM | SENT |