**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF NORTH DAKOTA**

| | | |
|---|---|---|
| PHOENIX CAPITAL GROUP HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00209 |
| | ) | |
| INCLINE ENERGY PARTNERS, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE TO DEFENDANT'S  12(b)(1)  MOTION TO DISMISS OR
ALTERNATIVELY, MOTION TO TRANSFER VENUE**

Respectfully Submitted,

Alexander Loftus, Esq.
Illinois Bar No. 6303484

LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com

*Attorney for Phoenix Capital Group Holdings, LLC*

1

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................ 1

II. STANDARD OF REVIEW ................................................................. 1

III. FACTUAL BACKGROUND ............................................................. 2

IV. ARGUMENT ................................................................................... 5

A. Abstention Requires "Exceptional Circumstances" Not Present Here ............... 5

B. Colorado River Abstention Does Not Apply ....................................... 7

i. The Lawsuits are Not Parallel ..................................................... 8

ii. The Colorado River Factors Weigh Against Abstention ................. 10

C. Venue in North Dakota is Correct ................................................... 13

i. Convenience of the Parties ........................................................ 14

ii. Convenience of the Witnesses .................................................... 14

iii. Interests of Justice .................................................................. 16

V. OBJECTION TO FORM AND ORDER OF MOTIONS .................. 17

CONCLUSION ................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*375 Slane Chapel Rd., LLC v. Stone Cnty.,*
53 F.4th 1122 (8th Cir. 2022) ................................................................... 6

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*
556 U.S. 635 (2009) .................................................................................. 1

*Cottrell v. Duke,*
737 F.3d 1238 (8th Cir. 2013) .......................................................... 5, 7, 10

*Dakota W. Bank of N.D. v. N. Am. Nutrition Cos.,*
284 F. Supp. 2d 1232 (D.N.D. 2003) ...................................................... 14

*Hughes v. Wheeler,*
364 F.3d 920 (8th Cir. 2004) ................................................................... 14

*Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops.,*
48 F.3d 294 (8th Cir. 1995) ....................................................................... 7

*Fischer Farms v. Big Iron Auction Co.,*
2020 U.S. Dist. LEXIS 14962 (D.S.D. 2020) ......................................... 15

*Francis v. Phoenix Cap. Grp. Holdings, LLC,*
2023 Tex. App. LEXIS 6732  (Texas 5th 2023) ....................................... 4

*Fru-Con Constr. Corp. v. Controlled Air, Inc.,*
574 F.3d 527 (8th Cir. 2009) ................................................................. 8, 9

*Fruehauf Corp. v. Carrillo,*
848 S.W.2d 83 (Tex. 1993) ........................................................................ 5

*Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.,*
2021 U.S. Dist. LEXIS 99456 (N.D. NY 2021) ...................................... 12

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,*
460 U.S. 1 (1983) ................................................................................... 5, 7

*Mountain Pure, LLC v. Turner Holdings, LLC,*
439 F.3d 920 (8th Cir. 2006) ..................................................................... 8

*New Orleans Public Service, Inc. v. City of New Orleans,*
491 U.S. 350 (1989) ............................................................................... 5, 6

*Niagara Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist,* 673 F.3d 84 (2nd Cir. 2012) ........................................................12

*Osborn v. United States*,
 918 F.2d 724 (8th Cir. 1990) ...................................................................1

*Rodriguez v. Ramsey*,
No. 03 CV 3930, 2004 WL 2793150 (N.D. Ill. Jan. 28, 2004) ................................10

*Spectra Commc'ns Grp., LLC v. City of Cameron*,
806 F.3d 1113 (8th Cir. 2015) ...................................................................5

*Sprint Communications v. Jacobs*,
571 U.S. 69 (2013) ...................................................................6

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
119 F.3d 688 (8th Cir. 1997) ...................................................................13, 16

*Titus v. Sullivan*,
4 F.3d 590 (8th Cir. 1993) ...................................................................2

## Rules

Fed. R. Civ. P. 12(b)(1) ...................................................................1

N.D.L.R. 7.1(A) ...................................................................17

Fed. R. Civ. P. 12(g) ...................................................................17

Plaintiff, Phoenix Capital Group Holdings, LLC, through its undersigned counsel, in response to Defendant Incline Energy Partners, L.P.'s Motion to Dismiss Based on Abstention pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively, Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), states as follows:

## I.      INTRODUCTION

Plaintiff and Defendant are competitors in acquiring and leasing North Dakota mineral rights. This dispute centers around a phone call and email by Defendant's principal to the North Dakota bank – with which Plaintiff was doing business in order to acquire debt financing and a $50,000,000 loan – promoting a false narrative. The loan, if successful, would have been a huge setback to Defendant and would have hindered a business that was modeled not on fair competition but on better financing and a general stranglehold of the region. Defendant intentionally interfered with an existing contract with the sole purpose being to undercut its competition on deals in North Dakota.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case." *Carlsbad Tech., Inc. v. HIF Bio, Inc*., 556 U.S. 635, 639 (2009). Jurisdictional issues are a matter for the Court to resolve prior to trial. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction. *Osborn*, 918 F.2d at 729 n.6. In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections

as it would defending against a motion brought under Rule 12(b)(6)." *Id*. (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (internal citation omitted). If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

## III.   FACTUAL BACKGROUND

This case is part of the nationwide response to a flurry of attacks on Adam Ferrari and the business his father owns, Phoenix Capital Group Holdings, LLC ("Phoenix"). The attacks were communicated at different times, to different parties, in different states, for different purposes. Businesses controlled by William Francis ("Francis") continue to unfairly compete with Phoenix and tortious acts related to the instant claims continue in other jurisdictions. The nationwide assault on several individuals and a separate business over a period of years by Francis and related businesses cannot be readily remedied in one jurisdiction absent agreement or a multiplicity of amendments in response to each attack that is discovered.

Unfortunately, the response to the attacks started with multiple counsel but it has since recently been coordinated by one firm coordinating three actions. The present lawsuit, in federal court in North Dakota, focuses on actions taken against Phoenix in North Dakota to undercut Phoenix's business in North Dakota. A second lawsuit, in federal court in Texas, is between Adam Ferrari, personally, and Francis, personally, related to defamatory statements Francis made about Ferrari. And the third lawsuit is a Texas state court action between Phoenix and Incline focusing on disparaging statements Incline made about Phoenix to business interests in Texas and Colorado.

Two days ago, the Northern District of Texas denied Incline principal's, Francis' motion to stay that case based on similar arguments. *See* (*Ferrari v. Francis* 3:23-cv-00455-S (N.D. Tex 2023) (Dckt # 44).

The instant action focuses on Francis' actions in North Dakota, directed to its residents, and affecting its residents. More specifically, this is a business dispute between Phoenix and Francis's business, Incline Energy Partners, L.P. ("Incline"), premised on unfair competition in only in this state. The synopsis of the North Dakota-focused claim is that Incline disparaged Phoenix to customers and lenders in North Dakota. Francis tortiously interfered with a loan that would have placed Phoenix on equal footing with Incline in North Dakota and enabled it to compete for and win mineral rights leases with North Dakota residents, undercutting its competitor with no legitimate justification. Through its smear campaign, Incline convinced North Dakota landowners to sell their land rights to Incline for less than Phoenix offered them by disparaging Phoenix. Once Incline got the landowners to sell to them short, Incline turned around and offered to sell the same land rights to Phoenix for a profit! The conduct in North Dakota is ugly and the real victims are the people of North Dakota who are tricked into accepting less for their land rights. There are no claims in this lawsuit by Ferrari personally, nor are there any claims for defamation. This is a business dispute related to unfair, tortious practices by a competitor.

The present action is distinct from the Texas federal court action which involves personal attacks on Adam Ferrari. That action is focused on personal dignitary harms caused by statements made against Ferrari personally. The claim would need to be filed in a court with general personal jurisdiction over Francis. It does not include any claims for harm to businesses or competition claim against the businesses controlled by Francis. It is currently limited to the following: "Mr. Francis' publication to FIBT in approximately 2021 or 2022, his February 28, 2022, publication to

Dalmore, his October 10, 2022, publication to 4 GRLZ Investments, and his publication to FINRA in mid-2022." *Ferrari v. Francis* 3:23-cv-00455-S (N.D. Tex 2023) (Dckt # 7).

During the Texas litigation, Francis argued that he was not responsible for all of the attacks on Phoenix and its owner, Lion of Judah Capital, LLC.[1] Based on Incline's argument, that someone else was levying these attacks, Phoenix initiated a claim in Daniel Ferrari's home jurisdiction, Will County, Illinois, against a John Doe to determine who was making the statements. That action yielded tremendous evidence from individuals who received the attacks issued by Incline but did not reveal any other individuals or entities responsible for the attacks with possibly one exception.

Finally, an action is pending in the Texas Supreme Court on appeal of an interlocutory order of a partial Texas Citizens Participation Act ("TCPA") dismissal. That case was premised on alleged defamatory statements and interference by Incline and Francis in Colorado and Texas. (*See Francis v. Phoenix Cap. Grp. Holdings, LLC*, 2023 Tex. App. LEXIS 6732 16 (Texas 5th 2023) ("More specifically, we must determine whether the Taylor email, the communication upon which Phoenix's lawsuit rests, constitutes a matter of public concern. *Id.* § 27.001(7).")). The appellate court concluded:

> "Phoenix's Manager and COO Lindsey Wilson alleges in her affidavit that 'Phoenix was close to closing the transaction with Ms. Krystal and Ms. Taylor, but after the email from Francis, Ms. Taylor had doubts about Phoenix and Incline ultimately purchased the mineral rights.' However, not only is this statement contradicted by the clear timeline of events, her allegation that Phoenix was 'close to closing the transaction' is unsupported by any evidence in the record. Phoenix offers no other evidence to support its assertion that the Taylor email caused damages. Phoenix failed to establish a prima facie case for the essential element of damages; therefore, we sustain Francis's and Incline's first, second, and third issues as they apply to the defamation, business disparagement, tortious interference with prospective contract, and civil conspiracy claims. *See In re Lipsky*, 460 S.W.3d at 592."

---

[1] Lion of Judah Capital, LLC. is owned by Daniel Ferrari. Daniel Ferrari is a resident of Will County Illinois, and his competency is frequently attacked due to his paralysis. Discovery in this litigation will determine whether additional Counts should be alleged against the party making such attacks.

*Francis v. Phoenix*, at *16

That action is pending appeal of the interlocutory partial dismissal. In general, a trial court retains plenary power over its interlocutory orders until a final judgment is entered. *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993).

The instant action relies on events that occurred after the TCPA appeal in North Dakota (Complaint ¶ 21-24) and facts concealed by Incline at the time of the TCPA appeal and obtained by subpoena. (Complaint ¶ 44-50). The actions are not parallel when one is premised on facts that did not occur until after the first action and other facts concealed by Defendant in the first action.

## IV.   ARGUMENT

### A.   Abstention Requires "Exceptional Circumstances" Not Present Here

Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River* abstention is appropriate only in "exceptional circumstances where the surrender of federal jurisdiction is supported by the "clearest of justifications." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 25-26 (1983). "Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender . . . the presence of federal-law issues must always be a major consideration weighing against surrender." *Id*. "[F]ederal courts have a virtually unflagging obligation to exercise the jurisdiction given to them, even when there is a pending state court action involving the same subject matter." *Cottrell v. Duke*, 737 F.3d 1238, 1244 (8th Cir. 2013). *Colorado River* abstention is only appropriate where (1) parallel state and federal actions exist and (2) exceptional circumstances warrant abstention. *Spectra Commc'ns Grp., LLC v. City of Cameron*, 806 F.3d 1113, 1121 (8th Cir. 2015). Neither requirement exists here.

The Eighth Circuit explained that under *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989)(*NOPSI*), "only exceptional circumstances justify

a federal court's refusal to decide a case in deference to the States," and these circumstances are "limited to three types of state civil and criminal proceedings: (1) 'pending state criminal prosecutions,' (2) certain 'civil enforcement proceedings' warranting abstention, and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *375 Slane Chapel Rd., LLC v. Stone Cnty*., 53 F.4th 1122, 1126 (8th Cir. 2022). "[F]ederal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *See NOPSI*, 491 U.S. at 358. "The courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends." *Id.* "They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *Id.* A federal court's "obligation to adjudicate claims within [its] jurisdiction" is "virtually unflagging." *See id*. at 359.

The Eighth Circuit further explained that, since *NOPSI*, the Supreme Court, in *Sprint Communications v. Jacobs*, 571 U.S. 69, 72 (2013), "emphasized that 'federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *375 Slane, supra* at 1126. And, despite "planning and zoning land-use issues [being] quintessential matters of state law," the Court of Appeals noted that the pendency of a state-court action outside the three categories of "exceptional circumstances" outlined in *NOPSI* "parallel state court proceedings do not detract from the 'virtually unflagging obligation' of federal courts 'to exercise the jurisdiction given them.'" *Id.* at 1128 (*quoting Sprint*, 571 U.S. at 77).

No exceptional circumstances exist justify *Colorado River* abstention. To exercise *Colorado River* abstention, the existing exceptional circumstances must be such that "repair to the state court would clearly serve an important countervailing interest." *Federated Rural Elec. Ins.*

*Corp. v. Arkansas Elec. Coops.*, 48 F.3d 294, 297 (8th Cir. 1995). There is no mechanical checklist to determine whether to exercise *Colorado River* abstention. *Moses H. Cone*, 460 U.S. 6. at 16. Courts instead use careful balancing of important factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*. In *Colorado River*, the Supreme Court, in approving the dismissal of the federal actions, considered the most important factor to be "the clear federal policy . . . [of avoidance of piecemeal adjudication of water rights in a river system," given Congress' judgment that the field of water rights is one "peculiarly appropriate" for comprehensive treatment in the forums having the greatest experience and expertise—state courts. *Moses H. Cone*, 460 U.S. at 16.

In *Colorado River*, the Supreme Court also noted other factors that tended to support dismissal of the federal action, including the lack of substantial progress in the federal action, the presence in the suit of extensive rights governed by state law, the geographical inconvenience of the forum, and the Government's previous willingness to litigate similar suits in state court. *Moses H. Cone*., 460 U.S. at 16. None of those factor's weigh in favor of *Colorado River* abstention here.

B.    ***Colorado River* Abstention Does Not Apply**

It is well-established that "a district court may utilize the Colorado River doctrine only when (1) parallel state and federal actions exist and (2) exceptional circumstances warrant abstention." *See Cottrell,* 737 F.3d at 1244-45. "In the Eighth Circuit, to be parallel, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *See id*. Moreover, determining whether exceptional circumstances exist requires evaluation of the following factors: (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions

may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority – not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights. *See Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006).

### i.        *The Lawsuits are Not Parallel*

Federal and state court cases are parallel only when the state proceeding will fully dispose of the claims presented in the federal court. *Fru-Con Constr. Corp. v. Controlled Air, Inc*., 574 F.3d 527, 535 (8th Cir. 2009). The analysis focuses on matters as they currently exist, not on whether they could be modified. *Id*. "On top of that, in keeping with the Supreme Court's charge to abstain in limited instances only, jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings." *Id*. (emphasis added).

In this case, the evidence supporting the claims based on interference with the FIBT loan was not discovered until the Texas state court case was already on appeal. While the complaint in the Texas state court action makes vague allegations regarding the FIBT loan, those allegations were purely speculative at the time. Indeed, it turned out they were correct. But Phoenix only discovered the extent of the disparaging remarks through the discovery it took in its Will County, Illinois case after the TCPA dismissal. The allegations as they were made in the Texas state court complaint were too speculative at that time to state a claim. It was not until Phoenix confirmed the who, what, when, where, and how that the claim became a viable one. Indeed, Incline complains in its other motion to dismiss that Phoenix's claims are even now insufficient, ignoring that Francis's emails Phoenix obtained answer the who, what, when, where, and how precisely.

In fact, the allegations as they existed at the time in the Texas state court action were so speculative, that they were never even addressed during the appeal. Everyone accepted that those allegations were not the basis for the claims and, without more, were not the focal point of the complaint. The focal point of those claims involves Incline's tortious interference with deals in Colorado and with business contacts in Texas. Now that Phoenix has confirmed what Francis said, to whom, and when, it has the information needed to establish a claim related to FIBT; a uniquely North Dakota claim.

Furthermore, there was no allegation regarding *prospective* business in North Dakota in the Texas state court case nor had all of the facts giving rise to that claim even occurred at the inception of the Texas state case. While the central claim in this North Dakota case is that Incline tortiously interfered with an existing contract that Phoenix had with FIBT related to the loan, there are critical allegations pertaining to prospective business in North Dakota that Phoenix lost as a result of Incline's disparagement campaign. Much of what occurred in North Dakota took place after the Texas state court case was already filed. And everything was discovered after the appeal of that matter. These cases are unique in that they involve a campaign of disparagement that is national in scope and that continued even after the initial lawsuits were filed. There is no case holding that a claim is barred based on conduct that occurred after the other action was out of the trial court. *Fru-Con Constr.* precludes this Court from guessing what the plaintiff may be plead in the Texas state court case in an amended complaint.

If the parties or issues involved in the proceedings have changed since the suits were originally filed, then taking a snapshot of the proceedings as they existed in the past says nothing about whether abstention will conserve judicial resources and promote comprehensive disposition of the litigation in the future. *Fru-Con Constr. Corp.*, 574 F.3d at 544. Therefore, it only makes

sense for the district court to view the state and federal proceedings as they *currently* exist to determine whether its discretion to abstain is triggered. *Id*. at 544-45.

Accordingly, the resolution of the Texas state court action will not dispose of the claims herein, and the cases are not sufficiently parallel to trigger the *Colorado River* doctrine. *See Cottrell,* 737 F.3d at 1244-45 ("When any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize Colorado River to refuse its jurisdiction.").

### ii.     *The Colorado River Factors Weigh Against Abstention*

Even if the Court determines the two cases to be parallel, the *Colorado River* factors still weigh against abstention. Evaluation of the factors "does not rest upon a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Rodriguez v. Ramsey*, No. 03 CV 3930, 2004 WL 2793150, at *2 (N.D. Ill. Jan. 28, 2004) (finding abstention proper where "several of these factors weigh against abstention."). In this case, each and every one of the applicable factors weighs against abstention.

### 1)     *Whether the state has assumed jurisdiction over property.*

The North Dakota federal lawsuit involves leases of mineral rights of property owned by North Dakota residents. While the North Dakota federal court has not strictly assumed jurisdiction over property, the matter does involve North Dakota property rights.

### 2)     *The inconvenience of the federal forum.*

North Dakota is undoubtedly the more convenient forum. As discussed below, the third-party witnesses are all located in North Dakota. The only party located in Texas is Incline's principal, William Francis. Having made the phone calls and sent the emails at issue in the present lawsuit to parties in North Dakota, Francis has availed himself of North Dakota and waived any claim of inconvenience.

3)     *The desirability of avoiding piecemeal litigation.*

Incline undertook a campaign of disparagement that was national in scope, disparaging Phoenix in numerous locales. While it may be more convenient for Incline to litigate the entirety of the issues in one forum, Incline has no right to insist on convenience, having broadcast its disparaging remarks so broadly and causing harm to individuals in North Dakota. Phoenix has elected to pursue a legal strategy that allows it to focus state-specific claims in the state where the disparaging remarks were directed. Incline must reap what it has sown and must not be allowed to insist on convenience. The fact that the North Dakota issue can be so easily severed – because it creates distinct claims – also urges against abstention.

4)     *Which case has priority.*

This factor focuses on, not necessarily which case was filed first, but puts a greater emphasis on the relative progress made in the cases. The Texas state court action has essentially made no progress. The matter is currently before the Texas Supreme Court related to the dismissal of certain counts in that action. Once the Supreme Court rules, the plaintiff will likely be given the opportunity to replead, at which point the defendant will undoubtedly bring another round of motions to dismiss. A quick resolution of this motion in the North Dakota federal court case, will allow this case to proceed expeditiously and it will immediately be much further along than the Texas state court case.

5) *The source of governing law, state or federal.*

The claims in the present lawsuit are governed by North Dakota state law and Federal Law. Williams Francis availed himself of North Dakota and its laws when he brought his disparagement campaign here. Texas has little involvement in the matter and its laws will not apply to claims arising out of business being done in North Dakota.

When the applicable substantive law is federal, abstention is disfavored, and, indeed, even the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex. *Niagara Mohawk Power Corp*. 673 F.3d 84, 102 (2nd Cir. 2012) (*citing Vill. of Westfield v. Welch's*, 170 F.3d 116, 123-24 (2d Cir. 1999). "[A]lthough in some rare circumstances the presence of state-law issues may weigh in favor of a federal court's surrender of its jurisdiction, the presence of federal-law issues must always be a major consideration weighing against surrender.'" *Niagara Mohawk Power Corp*. 673 F.3d at 103 (*citing Moses H. Cone*, 460 U.S. at 25).

In this case, Plaintiff makes a claim for unfair competition which the Lanham Act applies.

The Lanham Act is federal law. In their Motion to Dismiss, Defendants assert that "[t]he Soccer Club's federal claim and state law counterclaims seek the same relief, and address the same allegations, essentially that the [Football Club] has infringed on the Soccer Club's common-law trademark, which can be easily resolved in state court." Defs.' Mem. of Law at 8. Put simply, this is not what this factor asks. Rather, the Court must weigh whether there is a federal issue at hand, and whether there is any novel or complex issue of state law. See *Niagara Mohawk Power Corp*., 673 F.3d 84 at 102 (citing *Vill. of Westfield v. Welch's,* 170 F.3d at 123-24). Since there is a federal issue at hand here and the state law issues are not novel or complex, the Court weighs this factor against abstention.

*Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc*., 2021 U.S. Dist. LEXIS 99456, *11 (N.D. NY 2021) (holding abstention was not appropriate primarily because the parallel state action was still in its early stages and because the Lanham Act claims by the plaintiff involved federal subject matter.)

6)    *The adequacy of state-court action to protect the federal plaintiff's rights.*

The present lawsuit involves leases and mineral rights in North Dakota and North Dakota residents will be critical witnesses. The difficulty of obtaining witness testimony of North Dakota residents in a Texas state court action calls into question whether the Texas state court action can adequately address the issues and protect Phoenix's rights.

The *Colorado River* factors weigh against abstention and this Court should allow the case to proceed here.

**C.    Venue in North Dakota is Correct.**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." However, federal courts give "considerable deference to a plaintiff's choice of forum." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 694 (8th Cir. 1997). When considering a motion to transfer, the Court must consider three factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Id.* at 691. Motions to transfer venue should not be freely granted. *Id.* The district court's evaluation of a transfer motion, however, is not limited to these factors because such determinations require a case-by-case evaluation of the particular circumstances. *R.D. Offutt Co. v. Lexington Ins. Co.*, 342 F. Supp. 2d 838, 841 (D.N.D. 2004).

The Court should not transfer this matter because Incline has not demonstrated that it would be more convenient to litigate in Texas. When analyzing the convenience prongs, courts typically consider: (1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the

13

conduct complained of occurred, and (5) the applicability of each forum state's substantive law. *Terra Int'l*, 119 F.3d at 696.

### i.  *Convenience of the Parties*

Regardless of where this action proceeds, one of the parties will likely claim to be inconvenienced. That is, indeed, the very nature of a diversity suit. There is no doubt some inconvenience in litigating a case far from home, but the mere fact that the case is heard in a foreign state cannot be an adequate reason for a change of venue in a diversity action, since by hypothesis in such an action one of the parties will almost always have to litigate in a foreign state. *Hughes v. Wheeler*, 364 F.3d 920, 924-25 (8th Cir. 2004).

Here, it is more convenient for Incline to litigate in Texas. Phoenix – the initiator of the lawsuit – however, chose to litigate in North Dakota and "[i]ts choice must be afforded some deference." *Dakota W. Bank of N.D. v. N. Am. Nutrition Cos.*, 284 F. Supp. 2d 1232, 1235 (D.N.D. 2003) (citing *Hubbard v. White*, 755 F.2d 692, 694-95 (8th Cir. 1985)).

Transferring this action to the Texas will alleviate the alleged inconveniences to Francis because he resides in Texas. Members of Phoenix reside in neither Texas nor North Dakota. But Phoenix does a substantial amount of business in North Dakota and its members travel there regularly. Furthermore, with the advent of Zoom and the ubiquity of Zoom depositions, party depositions should not inconvenience anyone. The only time the parties would be forced to travel to North Dakota would be for evidentiary hearings or trials. With inconvenience only slight, this factor does not weigh in anyone's favor.

### ii.  *Convenience of the Witnesses*

The factor of convenience to the witnesses is given the most weight even though it is not dispositive and must be weighed against the other relevant factors. *Dakota W. Bank of N.D.*, 284

F. Supp. 2d at 1235. "The party seeking the transfer must identify, typically by affidavit, the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover." *Fischer Farms v. Big Iron Auction Co.*, No. CIV19-4111, 2020 U.S. Dist. LEXIS 14962, 2020 WL 475607, at *6 (D.S.D. Jan. 28, 2020) (quoting *Hylland v. Flaum*, No. 4:16-CV-04060-RAL, 2016 U.S. Dist. LEXIS 161807, 2016 WL 6901267, at *7 (D.S.D. Nov. 22, 2016)). The Court will determine the convenience of the witnesses based on the materiality and importance of their testimony. *Id.*

In its motion, Incline glosses over this factor, ignoring the fact that all the third-party witnesses are located in North Dakota. In its Complaint, Phoenix references Justin Voll and Joel Brown as key members of FIBT that were involved in the failed loan deal. Voll is President of FIBT and was heading up due diligence of the deal. (Complaint, ¶ 36.) Voll contacted Phoenix's deal team the Monday after Francis emailed the disparaging material about Ferrari to Brown questioning Phoenix about Ferrari's role with the company. (Complaint, ¶ 51.) Voll's testimony will be crucial to establish the status of the loan before Francis contacted Brown, the effect of Francis's disparaging remarks, and why the loan failed.

Similarly, Brown is the FIBT employee that Francis contacted both by phone and email in his attempts to undercut the loan. (Complaint, ¶¶ 44-50.) Brown will have critical information regarding the substance of the phone call, the concerns that were provoked by Francis's disparaging remarks, what he did next, and why the loan failed. As key members of FIBT, presumably both Voll and Brown reside in North Dakota.

Finally, Phoenix references North Dakota mineral owners, alleging that "Incline disparaged Phoenix to multiple lessors in North Dakota between 2021 and 2023 who Incline knew were considering offers from both Incline and Phoenix to obtain the leases." (Complaint, ¶ 20.)

Phoenix specifically identifies the Bakke family who "chose Incline because of Incline's disparagement campaign, despite the fact that Phoenix was offering more money." (Complaint, ¶ 21.) Phoenix alleges that "Incline's agents told potential lessors, including but not limited to the Bakke Family, that Phoenix was operated by criminals, among other false statements." (Complaint, ¶ 22.) Through discovery in other lawsuits, Phoenix identified the tortious email from Francis to Brown and confirmed Incline's campaign of disparagement. Discovery in the present matter will reveal other North Dakota mineral owners with whom Incline tortiously interfered. Members of the Bakke family and the other North Dakota mineral owners will be key witnesses in exposing the content of Incline's disparagement campaign and its effects.

North Dakota residents will be key witnesses in the present lawsuit. They were not the ones that instigated this lawsuit by disparaging Ferrari and Phoenix. That was Francis and his team. If anyone should be inconvenienced, choosing between the tortfeasor and otherwise innocent third parties, the tortfeasor should undoubtedly be required to travel. Many of the third party witnesses may, similarly, need to be subpoenaed and doing so in North Dakota will be much simpler.

This factor heavily favors North Dakota as the venue for this action.

### iii.    *Interests of Justice*

When considering the interests of justice, a court will consider (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. *Terra Int'l*, 119 F.3d at 696.

Many of these factors are neutral, but the overall consideration favors allowing this matter to proceed in North Dakota. First and foremost, the Court should give substantial deference to

Phoenix's choice of North Dakota as the venue. Second, transferring this matter to Texas with the expectation that it get consolidated with the other Texas action will unduly complicate the Texas matter and create obstacles to a fair trial. As the two cases demonstrate, Incline undertook a campaign of disparagement that was national in scope. Allowing Incline to consolidate all of its wrongdoings into one lawsuit will serve to simplify the tortfeasor's defense at the expense of a fair trial for Phoenix. Phoenix could have chosen to consolidate the matters to show the sheer scope of Incline's tortious actions. But it chose a different strategy; to focus on the disparaging remarks in the venue where the remarks had their impact. Here, Francis made remarks to a North Dakota bank and North Dakota residents in order to undercut its competitor's success in North Dakota. Incline should not be entitled to consolidate its wrongdoings at the expense of its victim's legal strategy. Further to that end, there are significant reasons why a North Dakota court should determine issues that affect North Dakota residents. And, if Phoenix has difficulty obtaining the testimony of North Dakota witnesses, it will create obstacles to a fair trial. Finally, while Incline may argue that judicial economy endorses transferring to Texas, Phoenix argues to the contrary. The lawsuit in Texas will be unnecessarily complex and slow. The present case is simple and discovery should be straightforward. This case can move expeditiously without the baggage and complication that the Texas lawsuit brings.

Overall, these factors weigh against transfer of venue and it is best for the case to proceed in North Dakota.

## V.      OBJECTION TO FORM AND ORDER OF MOTIONS

Local Rules limit Dispositive Motions to 40 pages in Length. N.D.L.R. 7.1(A). The instant Motion was 25 pages and the previously filed 12(b)(6) Motion was 26 pages. No motion nor other request was conveyed a motion in excess of 40 pages. The prolix kitchen sink briefing separated

as two voluminous motions apparently split in order to avoid local rules on page limitations should not be encouraged.

The best remedy for the violative motions, that saves Court of the burden created by the prolix memorandum, is to dispose of this second motion swiftly by application of Rule 12(g).

Federal Rule 12(b) provides "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required". In this case, the responsive pleading was the separate 12(b)(6) Motion. (Dkt # 6).  Federal Rule 12(g) provides "Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), **a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion**." (emphasis added) Accordingly, applying Rule 12(g), the instant Motion (Dckt # 8) must be denied.

## CONCLUSION

WHEREFORE, Plaintiff prays for an order denying Defendants' Second Motion to Dismiss and awarding such other and further relief as the Court deems just.

Dated: December 22, 2023                    Respectfully submitted,

                                       **PHOENIX CAPITAL GROUP, LLC,**
                                       Defendant

                                       By: _Alexander Loftus_

                                           One of Its Attorneys

Alexander Loftus, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com