## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| PHOENIX CAPITAL GROUP HOLDINGS, LLC, § § § Plaintiff, § § v. § § INCLINE ENERGY PARTNERS, L.P. § § Defendant. § | C.A. NO. 1:23-cv-00209 |

### INCLINE ENERGY PARTNERS, L.P.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Respectfully submitted,

Cortney C. Thomas
 Texas Bar No. 24075153
 cort@brownfoxlaw.com
Charlene C. Koonce
 Texas Bar No. 11672850
 charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

Joshua A. Swanson
North Dakota Bar No. 06788
VOGEL LAW FIRM
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
701.237.6983
jswanson@vogellaw.com

*Attorneys for Defendant Incline Energy Partners, L.P.*

Incline Energy Partners, LP ("Incline") files this Reply in support of its Motion to Dismiss (Doc. 6, 7) all claims asserted by Phoenix Capital Group Holdings, LLC ("Phoenix").

**A.     Under North Dakota Choice of Law Principles, Texas Law Applies to this Dispute.**

North Dakota rules determine which state law applies to this diversity case.[1]  *See N. Bottling Co., Inc. v. PepsiCo, Inc.*, 427 F. Supp. 3d 1106, 1117 (D.N.D. 2019), *aff'd*, 5 F.4th 917 (8th Cir. 2021).  To determine choice of law, North Dakota courts employ the "significant contacts test," which directs courts to "look at all of the significant factors which might logically influence it in deciding which law to apply and choose the law of the state that has the greatest contacts with the case." *Daley v. American States Preferred Ins. Co.*, 587 N.W.2d 159, 161 (N.D. 1998). Phoenix's contends "the entirety of the dispute centers around business activities in North Dakota[,] and the connections to Texas are almost nonexistent." Doc. 13, p. 9.  But Phoenix concedes Incline is a Texas-based entity, "domiciled in Texas" and that the relevant communications were made from Texas.  Doc. 13, p. 10.  The only North Dakota related "contacts" mustered by Phoenix is business conducted by Phoenix and Incline's subsidiaries in North Dakota with North Dakota mineral owners, and that FIBT is based in North Dakota.  Whether either party generally conducts business in North Dakota, however, is irrelevant since both companies operate in multiple states, including Texas.  Likewise, FIBT is merely a third-party witness, not a party, and communications to North Dakota certainly weighs no more heavily than communications made from Texas.  Thus, none of these "contacts" speak to the specific, enumerated contacts relevant to the "significant contacts" choice of law test.[2]

---

[1] Although Phoenix pleaded subject matter jurisdiction exists "pursuant to 28 U.S.C. §1331" [Doc. 1 ¶ 3], each of Phoenix's claims are pleaded under state law. As discussed *infra* in Part E, Phoenix did not allege any claim under the Lanham Act. Thus, the only basis for federal subject matter jurisdiction is diversity.

[2] The specific contacts considered in tort cases are: "the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, nationality, residence, place of business, or place of incorporation of the parties; and the place where the relationship, if any, between the parties is centered." *Daley*, 587 N.W.2d at 162 n. 3. "To determine which state has the most relevant contacts with particular communications, the court looks to where

Similarly, no "injury" occurred in North Dakota. The place of the injury is where the plaintiff resides during the relevant period. *See Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 798 (8th Cir. 1990) (Applying similar Restatement choice of law principles). Phoenix resides in Delaware, Colorado, and Illinois, Doc. 1 ¶ 1, and any alleged tort injury occurred in those states. As for the "place where the conduct causing the [alleged] injury occurred," Phoenix admits "the relevant statements . . . were likely made from . . . Texas." Doc. 13, p. 10.[3] Thus, any conduct-related contacts support applying Texas law.[4]

The balance of the Second Restatement factors also favors Texas law. Texas law is the predictable choice for this dispute, given Phoenix's choice in first asserting the same claims at issue in that forum. Moreover, its contention that "[a]ll of . . . [its] actions (acquiring North Dakota mineral rights, acquiring debt financing) occurred in North Dakota," Doc. 13 p. 11, is misleading— those are just the actions it chose to highlight. No injury occurred in North Dakota and Phoenix should not be permitted to manipulate governing law through artful pleading. Similarly, the "maintenance of interstate order" supports Texas law because of Phoenix's blatant forum shopping. This third-bite-at-the-apple case aims at avoiding discovery stays in the two earlier Texas lawsuits and escaping unfavorable Texas laws such as Texas's Defamation Mitigation Act,[5] TEX. CIV. PRAC. & REM. CODE § 73.055. *See Blake Marine Group v. CarVal Inv'rs LLC*, 829 F.3d 592, 595 (8th Cir. 2016) (applying similar Minnesota choice of law principles based on the Second Restatement and stating that the maintenance of interstate order "factor is relevant in tort suits

---

the communication took place or, if there is an established relationship between the parties, where the relationship was centered'" *Kraft v. Essentia Health*, 602 F. Supp. 3d 1130, 1144 (D.N.D. 2022) (internal quote omitted).

[3] *See also* Doc. 7, p. 9 n.12 ("Incline's "conduct" relative to Phoenix's claims occurred in Texas. . . ").

[4] None of the other specified contacts touch North Dakota either. Incline is a Texas entity, with its principal place of business in Texas. And Phoenix is neither incorporated nor resides in North Dakota. The parties have no formal relationship, and certainly not any relationship centered in North Dakota.

[5] Failure to satisfy the Defamation Mitigation Act, by requesting a retraction within 90 days of publication, precludes the recovery of punitive damages. TEX. CIV. PRAC. & REM. CODE § 73.055(c).

where there is evidence of forum shopping and [forum state] has only a 'remot[e] connection' to the claim."). The remaining factors—simplification of the judicial task, advancement of governmental interests, and application of the better rule of law—are either irrelevant or support Texas law. North Dakota's governmental interest is no greater than Texas's given that the alleged tortious conduct occurred in Texas, was committed by a Texas entity that resides in Texas and injured a Delaware entity residing in Colorado. In a separate Motion, Incline has requested dismissal based on abstention or transfer to the Northern District of Texas.

**B.      Rule 9(b) applies to Count Two and to any Factual Allegations Averring Fraud.**

Phoenix denies its claims are grounded in fraud, Doc. 13 p. 12, but then asserts "[t]o be sure, [Francis's comments] . . . were *fraudulent* and defamatory." Doc. 13 p. 20. Incline did not allege Rule 9(b) applied to Phoenix's claims writ large, but instead to the extent they are grounded in fraud—i.e. to specific factual allegations averring fraud and any cause of action that relies on those allegations.[6] Incline flagged the nebulous allegations that it "intentionally mislead" the Bakke family and "North Dakota mineral rights holders," which Phoenix admits aver fraud, Doc. 13 p. 20, but which are not pleaded with particularity. The Complaint provides no factual detail as to when or where those statements were made, what the alleged statements are, or with respect to "mineral rights holders," to whom they were made. Phoenix ignores these deficiencies and focuses only on the FIBT transaction. To the extent Phoenix's claims rely on these insufficiently pleaded allegations, as each except Count I does, they should be dismissed.

**C.      Phoenix failed to adequately allege *any* of the elements of its first claim.**

First, Phoenix provides only a conclusion that "valid contracts existed between Phoenix and FIBT," Doc. 1 ¶ 64. In support of that conclusion, Phoenix alleges that "it committed to borrow

---

[6] *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("[I]n cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud.").

$50,000,000 from FIBT and paid a non-refundable commitment fee in consideration of FIBT's mutual promises." Doc. 1 ¶ 31.  But the Complaint provides no facts regarding the alleged "mutual promises" from FIBT, which cannot be any obligation owed by FIBT to provide $50,000,000 in financing, since the Complaint also discloses the deal had not yet closed and FIBT was not obligated to close—"FIBT had sole discretion to complete the transaction."  Doc. 1 ¶ 32.  Because Phoenix alleges only a conclusion regarding the existence of a contract, which its additional allegations contradict, it therefore failed to allege facts sufficient to establish the first element. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (Mere labels and conclusions do not suffice).

Second, pleaded facts negate the second element because they show that FIBT had discretion to terminate the transaction and thus did not breach any alleged agreement.  Phoenix acknowledges FIBT's discretion but argues a circular conclusion: "FIBT's termination of the agreement was in bad faith because it had terminated the agreement based on the false premise (established by Incline) that Adam Ferrari was an officer of Phoenix and Phoenix had not disclosed that."  Doc. 13 p. 16.  Even assuming FIBT's termination was caused by Incline's statements and assuming that those statements were false (they were not), neither falsity nor causation demonstrates bad faith by FIBT.

Third, no pleaded facts support instigation of a breach by Incline. On this point, Phoenix's response trots out its prior factual allegations—that "FIBT's newfound interest in [Phoenix's public debt] program was a direct result of Francis's May 5 communication"—and then asserts in conclusory fashion that the communication "clearly establish[es] the third and fourth elements." Doc. 13 p. 16–17.  Phoenix's allegations, however, reveal that while FIBT's inquiries about Ferrari's role and Phoenix's regulatory compliance followed Francis's May 5th communication,

– 4 –

before the May 11th termination FIBT had multiple intervening communications with Phoenix. Those communications apparently did not assuage FIBT's concerns, after which it terminated.

Fourth, with respect to the absence of justification, Phoenix contends "Incline's only excuse in sending the email" was based on the competition privilege.  Doc. 13 p. 17–18.  Incline, however, also argued the statements were justified because they were nonactionable opinion or substantially true.  *See David L. Aldridge Co. v. Microsoft Corp.*, 995 F. Supp. 728, 742 (S.D. Tex. 1998) ("As the Restatement of Torts explains, one who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person truthful information.") (internal quote omitted)); *see also Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 580 (8th Cir. 2016) ("Statements of opinion are protected by the First Amendment, and, even if made maliciously or insincerely, cannot be actionable.").

Finally, Phoenix also argues, without support, that the competition privilege does not apply to existing contractual relationships and fails to engage with substance of the governing text. The plain text of the Restatement defeats Phoenix's argument: "One who intentionally causes a third person . . . **not to continue an existing contract terminable at will** does not interfere improperly with the other's relation if" the four Restatement factors are met."  Restatement (Second) of Torts § 768(1).  Although the competition privilege applies only to contracts that are terminable at will, *see* Restatement § 768(2), Phoenix pleaded FIBT's "sole discretion" to complete the transaction, an admission that it was terminable at will.  Pleaded facts establish justification for any alleged interference based on opinion, truth, and the competition privilege, thereby negating the fourth element of the tortious interference with contract claim, which should accordingly be dismissed.

**D.    Phoenix failed to adequately allege a fraud or defamation nucleus to satisfy the "independently tortious" element of its second claim.**

In conclusory fashion, Phoenix contends Francis's statements were independently tortious on the theory that they were "fraudulent[7] and defamatory." Doc. 1 p. 20. Phoenix did not plead a defamation claim,[8] nor does it allege that the specific statements at issue were defamatory. Because Phoenix relies on a defamation theory to meet the "independently tortious" element, the Court must analyze the publications to determine if they are actionable for defamation. *See Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 579–80 (8th Cir. 2016) ("[W]here a tortious interference claim is based upon an alleged defamation, if a plaintiff's defamation claim fails, the tortious interference claim must also fail because the plaintiff cannot establish an absence of justification as a matter of law.").

Phoenix focuses on Francis's statement to FIBT. Doc. 1 ¶ 48. Nothing in that statement is actionable as defamation because Ferrari's status as a felon is true, and Francis's statements about Ferrari's control are opinion. Indeed, Phoenix did not plead the statements in the body of the May 5, 2022 email are false, but only the conclusion that "*attachments*" to the email "made numerous false accusations" and "accused . . . [Ferrari] of committing various crimes." Doc. 1 ¶ 49. But we do not know what those attachments are, and they provide no support for a plausible defamation claim.[9] Nonetheless, the Court may judicially notice the truth about Ferrari's criminal record and felony status.[10]

---

[7] As already argued, *supra*, Part B, to the extent Phoenix relies on a fraud theory to meet the independently tortious element (such as its vague allegations about the "Bakke family" and unidentified mineral owners) these allegations are not actionable as pleaded, either under Texas or North Dakota state law or Rule 9(b).

[8] Except for defamation per se which requires no damages, Phoenix's defamation claim has already been dismissed in Texas. *See* Appellate Opinion, Doc. 9-6, p. 22 ("Accordingly, we conclude that Francis and Incline have provided evidence raising the affirmative defense of privilege, and we remand the case to the trial court for further consideration of this issue [with respect to the only remaining claim].")

[9] Even if statements in the attachments to the email omitted that other charges were eventually dropped, and if Phoenix had properly pleaded the attachments, those statements still would not be actionable because they remain substantially true. *Harrison v. Aztec Well Servicing Co., Inc.*, No. 1:20-CV-038-H, 2021 WL 6073164, at *8 (N.D. Tex. Dec. 23, 2021); *see also Smith v. Des Moines Pub. Sch.*, 259 F.3d 942, 947 (8th Cir. 2001).

[10] *See* Ferrari's criminal records, Doc. 9-4. *See also* Texas Federal Case, Dkt. 31, denying Motion to Seal.

Phoenix now admits Ferrari pleaded guilty to a felony as a true fact but argues that the "crucial falsity" is not the criminal accusations, but that Ferrari was controlling Phoenix, and asserts this "crucial statement" is verifiable and thus not opinion.[11] Doc. 13 p. 20. While Ferrari's control over Phoenix is verifiable,[12] Francis did not state that Ferrari was controlling Phoenix. He stated that *belief* that Ferrari is not controlling Phoenix is comparable to belief that Ferrari's disabled father is controlling Phoenix.[13] His statement that one belief is "akin" to another belief is ultimately "a subjective assessment and not an objectively verifiable fact." *Others First, Inc.*, 829 F.3d at 580. The FIBT statement is a nonactionable opinion. *See id.* ("Statements of opinion are protected by the First Amendment. . ."). Accordingly, because Phoenix failed to allege facts sufficient to show that the alleged statements were actionable for defamation and therefore independently tortious, Count Two should be dismissed.

E. **Phoenix did not plead its "Unfair Competition" claim under the Lanham Act, and such a hypothetical Lanham Act claim would fail as a matter of law in any event.**

In response to Incline's argument that Phoenix did not allege any mark and thus does not state a claim for unfair competition under North Dakota common law, Phoenix changed the entire basis of its claim—now arguing that it is bringing this claim under the federal Lanham Act. Doc. 13 p. 23. Phoenix did not plead its unfair competition under the Lanham Act. Even if it did, such a hypothetical claim would still be deficient.

Start with the obvious problem that the Complaint says nothing about the Lanham Act.

---

[11] Phoenix also concedes that "Francis may have believed that Ferrari was the controlling force that's actually running Phoenix," thereby rendering the statement nonactionable under Texas law and the First Amendment, which require "fault," the defendant knew or should have known that the allegedly defamatory statement was false. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (states may define for themselves what constitutes defamation "so long as they do not impose liability without fault").

[12] For that matter, it is a verifiable fact prominently displayed on Phoenix's website that Adam Ferrari is Phoenix's Chief Executive Officer. https://perma.cc/64XB-V3F6

[13] "After digesting all of the instruments which have been filed with the SEC and elsewhere, for someone to consume those and still believe Adam is not actually running Phoenix would be akin to believing his paralyzed father has been one of the most active mineral buyers in the Williston since Adam was arrested." Doc. 1 ¶ 48.

Doc. 1. Worse, the Complaint plainly invokes "Phoenix's rights under the common law of the state of North Dakota." Doc. 1 ¶ 79. Phoenix contends that this is not a problem because "claim[s] for infringement of common law trademark not specifying substantive state law [have been] treated as false designation claim[s] under" the Lanham Act. Doc. 13. p. 23. But the Complaint here *did specify* substantive state law. Doc. 1 ¶ 79. Phoenix further states that "Section 43(a) of the Lanham Act . . . is cumulative of common-law remedies," Doc. 13 p. 23, an assertion that misstates the law and is at odds with the principal case that Phoenix cites, as well as the leading treatise on the Lanham Act. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (Scalia J.) ("[B]ecause of its inherently limited wording, § 43(a) [of the Lanham Act] can never be a federal 'codification' of the overall law of 'unfair competition,' but can apply only to certain unfair trade practices prohibited by its text." (quoting 4 McCarthy, Trademarks and Unfair Competition § 27:7 (4th ed.))). Phoenix cannot transmogrify its state law unfair competition claim into a federal Lanham Act claim. *See Passalacqua Corp. v. Rest. Mgmt. II, Inc.*, 885 F. Supp. 154, 157 (E.D. Mich. 1995) (rejecting similar argument that "resolution of plaintiff's state law claim of unfair competition requires the court to resolve a substantial question of federal law" under the Lanham Act and concluding that "[i]t is clear that plaintiff's state law claim cannot be recharacterized as a federal trademark claim"); *see also 1st Nat. Reserve, L.C. v. Vaughan*, 931 F. Supp. 463, 467 (E.D. Tex. 1996). The claim should be dismissed.

Even if Phoenix had pleaded its unfair competition claim under the Lanham Act, it does not meet the requisites of that statute. Phoenix's Response indicates that it intends to bring its claim under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a)(1). Doc. 13 pp. 23–26. As best Incline can discern, Phoenix purports to proceed under a false advertising theory. *See* Doc. 13 p. 25 (citing § 1125(a)(1)(B)). That provision requires, among other elements, that the defendant

– 8 –

made a false statement of fact about its [services] in a commercial advertisement, and the defendant caused the false statement to enter interstate commerce. *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1042 (8th Cir. 1999). Phoenix would fail to meet these elements. First, the alleged communications either to FIBT or the Bakke family are not commercial advertisements, nor are they even about Phoenix's services. *See* 15 U.S.C. § 1125(a)(1). Here, the statements were not about Phoenix's services at all but about the misdeeds of one of Phoenix's employees. And in the case of the FIBT transaction, FIBT is a lender, not a customer of Phoenix or potential customer of Incline. Thus, Phoenix cannot plausibly allege that Francis's statement to FIBT was "commercial advertising or promotion" within the meaning of § 1125(a)(1) because Francis was not soliciting the purchase of any goods or services. Moreover, the complaint fails to allege an effect on interstate commerce, a jurisdictional prerequisite for the Lanham Act. *See Vaughan*, 931 F. Supp. at 466 (Interstate jurisdictional requirement is threshold that plaintiff must prove to invoke federal protection under the Lanham Act). Accordingly, because Count Three would fail because Phoenix did not plead it under the Lanham Act and cannot do so, it should be dismissed.

**F.     Count Four should be dismissed because Phoenix failed to allege that it conferred any direct benefit to Incline.**

Rather than engaging Incline's argument that the unjust enrichment claim should be dismissed because Incline was not enriched by Phoenix, Phoenix merely rehashes the elements and repeats its factual allegations. Doc. 13 pp. 27–28. But Phoenix fundamentally misconceives the very nature of unjust enrichment, which is a quasi-contractual common law doctrine, not a catch-all for generic tort harms. "Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another." *Hayden v. Medcenter One, Inc.*, 828 N.W.2d 775, 781 (N.D.

2013). "The doctrine is applied in the absence of an express or implied contract." *Id.* Here, there is nothing even remotely resembling a contractual relationship between the parties, who are instead, "direct competitor[s]." Doc. 1 ¶ 13.

Phoenix nonetheless argues that "there is a clear nexus between defendant's enrichment and the plaintiff's impoverishment: Incline could beat its sole competition—Phoenix—out for deals with Phoenix lacking the funding from the FIBT loan." Doc. 13 p. 27. Thus, Phoenix is contending that Incline benefited *indirectly* from a more favorable competitive landscape that allegedly resulted from Phoenix losing out on financing from a third-party lender. That is simply not enough. For example, the Supreme Court of North Dakota affirmed dismissal of unjust enrichment claims where the defendant "received no benefit directly from" the plaintiffs, but, instead, a transaction between the plaintiffs and a third-party "indirectly benefitted" the defendant. *Thimjon Farms P'ship v. First Intern. Bank & Tr.*, 2013 ND 160, ¶ 21, 837 N.W.2d 327, 336 (N.D. 2013). ("Generally, a third party is not liable under unjust enrichment simply for benefitting from a contract between two other parties."); *see also Kraft v. Essentia Health*, 604 F. Supp. 3d 813, 826 (D.N.D. 2022) (dismissing unjust enrichment claim at the 12(b)(6) stage where the plaintiffs failed to allege any "benefit [the defendant] received specifically from the Plaintiffs").

## **CONCLUSION**

Phoenix's claims are defectively pleaded or legally defective. Accordingly, Incline respectfully requests that the Court dismiss the Complaint with prejudice,[14] and requests such other relief to which it may show itself justly entitled.

---

[14] The Court should deny Phoenix's request for leave to amend because amendment would be futile. *See* FED. R. CIV. P. 15(a)(2); *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994). Amendment would fail to cure the defects identified here because Phoenix cannot change facts fundamental to its claims, such as Ferrari's felony status. *See Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 353 (2022).

Respectfully submitted,

By: */s/ Charlene C. Koonce*

    Cortney C. Thomas
     Texas Bar No. 24075153
     cort@brownfoxlaw.com
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Andrew C. Debter
     Texas Bar No. 24133954
     andrew@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX 75225
    Tel. 214.327.5000
    Fax. 214.327.5001

    Joshua A. Swanson
    North Dakota Bar No. 06788
    VOGEL LAW FIRM
    218 NP Avenue
    PO Box 1389
    Fargo, ND 58107-1389
    701.237.6983
    jswanson@vogellaw.com

*Attorneys for Defendant Incline Energy Partners, L.P.*

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce