# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| PHOENIX CAPITAL GROUP HOLDINGS, LLC, § § § | |
| Plaintiff, § § | |
| v. § § | C.A. NO. 1:23-cv-00209 |
| INCLINE ENERGY PARTNERS, L.P. § § | |
| Defendant. § | |

### INCLINE ENERGY PARTNERS, L.P.'S REPLY
### IN SUPPORT OF MOTION TO DISMISS BASED ON
### ABSTENTION, OR ALTERNATIVELY, MOTION TO TRANSFER VENUE

Respectfully submitted,

Cortney C. Thomas
Texas Bar No. 24075153
cort@brownfoxlaw.com
Charlene C. Koonce
Texas Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
Tel. 214.327.5000
Fax. 214.327.5001

Joshua A. Swanson
North Dakota Bar No. 06788
VOGEL LAW FIRM
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
701.237.6983
jswanson@vogellaw.com

*Attorneys for Defendant Incline Energy Partners, L.P.*

In support of its Motion to Dismiss Based on Abstention, etc., (Dkts. 8, 9 "the Motion"), Incline Energy Partners, LP ("Incline") respectfully shows the Court as follows.

The "nationwide flurry" of lawsuits filed by Phoenix and the man Phoenix now identifies on its website as its CEO, Adam Ferrari,[1] against Incline and its managing partner, all rest on the same factual premise: purported injury arising from statements that Ferrari controls or serves as Phoenix's CEO and is a felon. Even if these purported statements were actionable, a Texas State Court has already dismissed each of the claims Phoenix asserts here. Accordingly, the Court should abstain from exercising jurisdiction in this case, or alternatively, transfer it to Texas.

## ARGUMENT

**A.      Exceptional Circumstances Justifying *Colorado River* Abstention Exist Here.**

In arguing parallelism does not exist, Phoenix directs the Court to cases interpreting *Younger* and *Burford* abstention.[2] *See 375 Slane Chapel Rd., LLC v. Stone Cnty., Missouri*, 53 F.4th 1122, 1125 (8th Cir. 2022) (discussing and rejecting *Younger* abstention); *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 109 S. Ct. 2506, 2509 (1989) (discussing and rejecting *Burford* abstention). The Motion depends on neither, and thus the "categories" of cases outlined in *NOPSI* and discussed in *375 Slane*—which implicate important state interests or complex state regulatory schemes—have no relevance. Instead, this Court's discretion under *Colorado River*[3] to decline the waste of judicial resources and halt forum shopping should govern. *See Spectra Communications Group, LLC v. City of Cameron, Mo.*, 806

---

[1] The Court may and should judicially notice Phoenix's website, which now identifies Ferrari as its CEO. *See* https://phxcapitalgroup.com/our-team/.  For the Court's convenience, a copy of the relevant page is also attached**.**
[2]*Younger* abstention permits federal courts to abstain from exercising jurisdiction if "(1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012). *Burford* abstention requires federal courts to decline interference with complex state regulatory schemes in cases involving (1) difficult state-law questions bearing on policy problems of substantial public import, or (2) efforts to establish a coherent state policy regarding a matter of substantial public concern—is not applicable." *NOPSI*, 109 S. Ct. at 2509.
[3]*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

F.3d 1113, 1121 (8th Cir. 2015) (affirming *Colorado River* abstention where "the federal and state courts could reach conflicting opinions on the same issues,"); *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Cooperatives, Inc.*, 48 F.3d 294, 299 (8th Cir. 1995) (considering forum-shopping spree in abstention analysis).

> **1.   Parallelism exists because claims based on the FIBT communication were central to the Texas State Case but have been dismissed.**

Parallelism exists when "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Spectra Comm's Grp., LLC*, 806 F.3d at 1121. Phoenix's arguments wholly ignore the scope of res judicata. Claims based on the same FIBT communication and alleged communications (purportedly made before and while the Texas State Case has been pending) to North Dakota or Colorado mineral owners (that Phoenix is controlled by Adam Ferrari, a felon) will be barred by a final judgment in the Texas State Case. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) (Res judicata bars claims that were raised *or that could have been raised*).

In seeking to differentiate the parallel Texas State Case, Phoenix contends this case rests on "events that occurred after the TCPA appeal" and "facts concealed by Incline."[4] Phoenix's own pleadings belie this contention.  Phoenix filed the Texas State Case on June 15, 2022 and alleged it was defamed and injured through purported contractual interference from statements made *in June 2021* and earlier to Colorado mineral owners and that Incline unfairly competed and conspired against it through the FIBT communication and statements made Hess, Exxonmobil and others.[5] Here, Phoenix contends it was similarly disparaged in communications made "to multiple [unidentified] lessors in North Dakota *between 2021 and 2023* . . . ."[6]  but does not allege any

---

[4] *Response* p. 5.
[5] Dkt. 9-2, ¶¶ 30–32 (State Petition).
[6] Dkt. 1, ¶ 20.

statement made before June 2022 differed from any later statement, or argue it could not have included claims premised on unspecified statements purportedly made before June 2022 in the Texas State Case.  Nor does Phoenix argue or demonstrate that in the exercise of diligence it could not have discovered statements purportedly made to North Dakota mineral owners in time to include claims premised on them in the Texas case. *See Rangel v. Rangel*, No. 02-05-411-CV, 2007 WL 291389, at *2 (Tex. App.—Fort Worth Feb. 1, 2007, no pet.) (affirming summary judgment premised on res judicata, despite contention that plaintiff discovered new facts and new claims unknown at the time of the judgment because "the doctrine also precludes claims or defenses that, through diligence, should have been litigated in the prior suit but were not.").

And Phoenix pleaded the exact same FIBT communication as the basis for both lawsuits,[7] although it contends it made only "vague" references to the FIBT communication in the Texas State Case, such that its allegations were speculative and too vague to state a claim.[8] Phoenix's own Texas State Court Petition and briefing disprove this contention and provide further support for abstention (as well as the basis for a potential Texas ethics violation).[9] In the Texas State Case, no one, least of all Phoenix, accepted that the FIBT communication was not the basis for its claims. Its Original Petition, its briefing and evidence, and oral arguments addressed the FIBT communication at length.[10] That it obtained additional information about the content of that

---

[7] *Id.* at ¶¶ 36–40; Dkt. 9-2, ¶¶ 36-39 (state petition).

[8] *Response* p. 9 ("[T]he allegations . . . regarding the FIBT communication was so speculative, they were never even addressed during the appeal").

[9] *See* Tex. R. Civ. P. 13 (attorneys signing pleadings certify pleadings and other papers are not filed for an improper purpose, or "as an experiment" to obtain a court ruling).

[10] The Court may access Phoenix's TCPA briefing in the Texas State Case, in which Phoenix expressly argued that the FIBT communication caused Pheonix the loss of "the $50,000,000 credit facility." *See* Phoenix's September 29, 2022 Response to Defendants' TCPA Motion to Dismiss, pp. 12–13; *see also*, pp. 24–26, found at https://courtsportal.dallascounty.org/DALLASPROD/, Cause No. DC-22-06350. Although much of Phoenix's evidence was stricken, it nonetheless submitted several affidavits which also addressed the FIBT communication in support of its Response to the TCPA Motion to Dismiss. *See* Wilson Affidavit, attached as Exh. 1 to Phoenix's Response, ¶ 17-18; and Allen Affidavit, attached as Exhibit 2 to the Phoenix's Response, ¶¶ 14-15. Likewise, in the trial court during oral arguments, Phoenix informed the trial court, "***the only communications that are the subject of—any claim—is the Taylor email and—the First Bank communication.***" *See* Incline's Appellate Reply Brief, p.

communication—while discovery was stayed in Texas—does not eliminate the communication as one basis for its now-dismissed Texas claims. Nor did the appellate court fail to consider claims premised on the FIBT communication because the claims were "speculative." It concluded claims premised on the FIBT communication, including tortious interference with prospective and existing contract and unfair competition, had been *dismissed*, on the merits.[11] Likewise, in its Petition for Review filed in the Texas Supreme Court on December 28, 2023, Phoenix included the chart below and expressly argued its claims, which are more comprehensive than those pleaded in this case, were premised on "the Taylor email" and the FIBT communication:[12]

| NO. | CLAIM / THEORY OF LIABILITY | REGARDING |
|---|---|---|
| 1 | Defamation / Defamation Per Se | Taylor & FIBT |
| 2 | Business Disparagement | Taylor & FIBT |
| 3 | Tortious Interference with Existing Contract | Taylor & FIBT |
| 4 | Tortious Interference with Prospective Relations | Taylor & FIBT |
| 5 | Unfair Competition | Taylor & FIBT |
| 6 | Civil Conspiracy | Taylor & FIBT |

Phoenix argued the Texas appellate court erred in failing to consider the FIBT communication when it affirmed dismissal of those claims.[13] These conflicting arguments—Phoenix's appellate argument that the FIBT communication was one of two statements on which Phoenix's claims rested and that the Texas courts erred in dismissing claims premised on that communication, as

---

28 (citing the appellate record for the quoted statement). The appellate briefing, which the Court may judicially notice, are available here: (Appellants' opening brief): https://search.txcourts.gov/Appellants'openingbrief; (Appellants' Reply Brief): https://search.txcourts.gov/Appellants'ReplyBrief.

[11] Appellate Opinion, Dkt. 9-6, Exh. A-5, p. 3, n.2.

[12] Again, the Court may judicially notice Phoenix's briefing in the Texas State Case. Its Petition for Review is available here: https://search.txcourts.gov/PetitionforReview.
Indeed, one heading in Phoenix's Petition for Review states, "Hoping to Dissuade Continued Misconduct, Phoenix Filed Suit Concerning the Taylor Email and FIBT Package." *Id.* p. 5. Phoenix also identifies an "Unbriefed Issue" in ¶ 4 of its Petition for Review, as "Did the appellate court misconstrue the trial court's Order . . . dismissing all 'portions of the lawsuit relying on the FIBT package.'").

[13] *Id.* No error occurred in either Texas state court that has ruled on Phoenix's claims premised on the FIBT communication, however. The trial court dismissed claims premised on the FIBT communication based on Phoenix's failure to satisfy its TCPA burden regarding any claim premised on the statement and the appellate court affirmed.

opposed to Phoenix's current efforts to convince this Court that the FIBT communication was so speculative as to not have been part of its Texas pleading—illustrate the importance of abstention here. Abstention seeks to prevent the likelihood of conflicting outcomes, which is exactly the outcome Phoenix seeks.

Nor can Phoenix defeat parallelism by what it *might* plead in an amendment, if the Texas case is not dismissed entirely following remand, since parallelism considers each case as it exists now.[14] And it certainly cannot defeat parallelism by ignoring what *has already been dismissed* to contend the two cases are *no longer* parallel because it seeks to assert claims, based on the same facts, that have already been dismissed. The same dispute is at issue between the same parties, premised on the same underlying facts. Resolution of the Texas State Case will fully dispose of this case and the cases are accordingly parallel. *See Bank of Okla., N.A.*, 671 F. Supp. 2d at 1063.

### 2. The *Colorado River* Factors Weigh Heavily in Favor of Abstention.

**a.    Convenience of the forum.**[15] Neither party is located in North Dakota,[16] and Phoenix previously chose Texas as the more convenient forum for claims premised on the same FIBT communication and was thus unconcerned about convenience for the same witnesses it now asserts will be inconvenienced if the Court abstains.  Phoenix nonetheless argues that North Dakota provides the more convenient forum based on the location of non-party witnesses, but as it conceded regarding convenience with respect to transfer, third-party witnesses could be deposed here with their testimony presented at trial through depositions or a "Zoom" appearance.[17] Nor

---

[14] *Response* p. 9 ("*Fru- Con Constr.* precludes this Court from guessing what the plaintiff may plead in the Texas state court case in an amended complaint"). *Fru-Con*, however, also precludes Phoenix from defeating parallelism based on what it might plead. *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 539 (8th Cir. 2009).

[15] No *res* exists, so the first factor either weighs against abstention or is irrelevant. *See Spectra Comm's Grp., LLC*, 806 F.3d at 1121.

[16] Some courts consider only the convenience for the parties, not witnesses. *See Godfrey v. Branstad*, 56 F. Supp. 3d 976, 984 (S.D. Iowa 2014) (concluding second factor not relevant where "neither party will be inconvenienced as both this Court and the state court are located in Des Moines, Iowa.").  In contrast, here, both parties are located in Texas.

[17] Phoenix, however, concedes Zoom depositions are likely. *Response* p. 14.

does Phoenix provide any evidence that any third-party witness, for instance someone from the vaguely pleaded "Bakke Family" (who may or may not reside in North Dakota) or any other wholly unidentified mineral owners (who may or may not live in North Dakota)[18] would be unwilling to travel to Texas or inconvenienced by the necessity of such travel. The convenience factor also considers where the alleged misconduct occurred,[19] which Phoenix concedes was Texas.[20] Convenience weighs in favor of abstention.

        **b.**        **Denial of abstention will cause piecemeal litigation.** "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Nabholz Const. Corp. v. Beck*, 699 F. Supp. 2d 1101, 1107 (E.D. Mo. 2010) (internal quotation marks omitted)). The risk of piecemeal litigation receives the greatest weight of all relevant factors. *Federated Rural,* 48 F.3d at 297–98; *see also Colorado River*, 96 S.Ct. 1236 (most important factor weighing in favor of abstention was the "clear federal policy" of avoiding "piecemeal adjudication of water rights in a river system"). As one court concluded, "[r]equiring the parties to litigate parallel claims simultaneously in two different courts creates the potential for duplicative litigation, opens the door for inconsistent rulings, and adds unnecessary time and cost to the parties and the courts." *Godfrey v. Branstad*, 56 F. Supp. 3d 976, 984 (S.D. Iowa 2014).

    Phoenix's "litigation strategy" has no bearing on this factor, except to the extent the Court declines to allow forum shopping and serial cases intended to avoid the result obtained in the first. *See Window World Int'l, LLC v. O'Toole*, No. 4:19-CV-2363-SEP, 2020 WL 7041814, at *9 (E.D.

---

[18] Incline has no idea who the Bakke family is, or the identity of any other North Dakota mineral owners who were purportedly dissuaded from contracting with Phoenix by any statement made by Incline.
[19] *See Window World Int'l, LLC v. O'Toole*, No. 4:19-CV-2363-SEP, 2020 WL 7041814, at *8 (E.D. Mo. Nov. 30, 2020) (considering location of alleged misconduct under convenience factor).
[20] Dkt. 13, p. 10.

Mo. Nov. 30, 2020) ("[T]he Court finds that allowing this case to proceed at this time would risk violating 'traditional principles of equity, comity, and federalism' by allowing a party to seek in a federal forum what it has been denied in the state forum."). Nonetheless, if Phoenix was concerned about the "nationwide campaign" it contends occurred (and which Defendant denies) it should be motivated to seek a full resolution in one forum, where general jurisdiction exists over Francis and Incline, as it did was when it filed the Texas State Case. That case addressed statements purportedly made to Colorado residents, as well as "Hess and Exxonmobil," which "of course, are large multinational energy corporations."[21] Phoenix and Ferrari seek piecemeal litigation by asking this Court to consider the same claims already dismissed by the Texas State Court.

        **c.**      **The Texas State Case has priority.**  Phoenix wrongfully contends the Texas State Court action "has essentially made no progress," ignoring the Texas trial court's order granting Incline's TCPA motion in part and the appellate court's lengthy opinion dismissing all but one of Phoenix's six claims."[22] The docket and the appellate opinion demonstrate the contrary.[23] Similarly, since the Texas appellate court's order limits remand to consideration only of whether an affirmative defense bars the one remaining claim,[24] Phoenix's unsupported contention that it will likely be given the opportunity to replead in the Texas State Case depends on the statistically, factually, and legally unlikely reversal by the Texas Supreme Court.

        **d.**      **State law governs.**  Phoenix did not assert a Lanham Act claim. It asserted an unfair competition claim, premised on North Dakota common law.[25] While Incline contends

---

[21] Dkt. 9-2, p. 9 of 22, ¶ 29.
[22] *Response* p. 11.
[23] Dkt. 9-2, Ex. A-2, A-5.
[24] *Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013) ("[T]rial court has no authority to take any action that is inconsistent with or beyond the scope of that which is necessary to give full effect to the appellate court's judgment and mandate.").
[25] Dkt. 1, ¶ 79. North Dakota's requirement that an unfair competition claim *satisfy the elements* of the Lanham Act does not change the governing law from state to federal. *See Passalacqua Corp. v. Rest. Mgmt. II, Inc.*, 885 F. Supp. 154, 157 (E.D. Mich. 1995) ("It is clear that plaintiff's state law claim cannot be recharacterized as a federal trademark

– 7 –

Texas rather than North Dakota law controls, no federal claims are asserted here. *Compare, Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 620CV1140LEKTWD, 2021 WL 2142924, at *1 (N.D.N.Y. May 26, 2021) (evaluating claim asserted "under the Lanham Act").

      **e.**    **The state forum is adequate.** This factor has relevance only where one forum is "*inadequate* to protect a party's rights." *Fru-Con Const. Corp.,* 574 F.3d at 539. Phoenix cannot legitimately contend Texas is not an adequate forum since it *chose* Texas to litigate *the same claims at issue here,* based on similar communications made to Colorado mineral owners and the same communication made to a North Dakota bank.

In sum, the likelihood of piecemeal litigation, the most important factor, weighs heavily in favor of abstention. Further, North Dakota is not convenient for Incline while Texas is convenient for both sides, Phoenix conceded Texas as a convenient forum for FIBT's witnesses and does not identify any North Dakota mineral owners who reside in North Dakota but could not be deposed or presented at trial by Zoom, the Texas case has priority, Texas is an adequate forum to protect both parties' rights, and federal law has no application. The exceptional circumstances necessary for abstention warrant that remedy here, and the Court should stay or dismiss this case.

**B.**    **Alternatively, this Case Should Be Transferred to the Northern District of Texas.**

The pendency of two related cases pending in Texas, without regard to any other factor, justifies transfer. *Continental Grain Co. v. The FBL—585*, 364 U.S. 19, 26 (1960) (Section 1404 was designed to avoid the waste of time and resources resulting from two cases involving the same issues pending in different forums). [26] Other considerations also justify transfer.

      **1.**    **Convenience of the Parties Weighs Heavily in Favor of Transfer.**

Phoenix ignores the diminished consideration afforded North Dakota as the chosen forum,

---

claim.").
[26] *See* authorities cited at p. 16 of Motion.

where neither party resides here.[27] Nor does it provide any evidence in support of its contention that Phoenix's members travel to North Dakota regularly, the location of its witnesses or documentary evidence, or the greater ease for both parties in appearing in Texas. It does, however, concede that the relevant conduct occurred in Texas, which thus also supports transfer.

### 2. Convenience of the Witnesses.

A Texas federal court is a convenient forum for witnesses related to Ferrari's claim premised on the FIBT communication. And as Phoenix has already admitted through filing in Texas based on the same claims, a Texas state court is convenient for Phoenix's witnesses, including FIBT employees and Colorado mineral owners. Further, as it notes with respect to convenience for the parties, key witnesses including FIBT employees and the unidentified members of the anonymous "Bakke family" can be deposed by Zoom and can testify in the same manner. Incline does not know who the Bakke family is or whether they own minerals in Williams County but reside in Texas or elsewhere, and Phoenix provides no illuminating or determinative evidence. Phoenix likewise fails to identify any potential North Dakota mineral owners, if any, who reside in North Dakota and could not testify by Zoom or other remote means. Thus, while North Dakota *may* be more convenient for some third-party witnesses, that conclusion is neither certain nor dispositive.

### 3. The Interests of Justice Support Transfer.

Deference for a foreign plaintiff's choice of forum is substantially diminished. *De Melo v. Lederle Labs.*, 801 F.2d 1058, 1062 n. 4 (8th Cir. 1986). Further, Phoenix again, ignores the judicial economy favoring transfer, and its argument that consolidation should not occur "at the expense of its legal strategy," fails because avoidance of res judicata and forum shopping are the

---

[27] *See* Motion at p. 17.

cornerstone of that strategy. Indeed, Phoenix's contention that the "lawsuit [it filed first but is now losing] in Texas will be unnecessarily complex and slow [while it races against res judicata here]"[28] reveals the strategy at work. Moreover, as discussed in Incline's Rule 12(b)(6) Motion to Dismiss and supporting Reply, Texas rather than North Dakota provides the governing law.

All factors support transfer, and if the Court does not abstain from exercising jurisdiction, it should transfer this case to the Northern District of Texas for consolidation with the Texas Federal Case.

### C.      The Form and Order of Motions Was Appropriate.

Nothing in North Dakota's local rules requires that motions premised on different legal theories, governed by different rules and statutes, and different evidentiary standards should or must be filed as one motion. Incline filed two separate motions because abstention and venue permit and indeed demand consideration of evidence outside the pleadings, while a 12(b)(6) motion limits the Court to the pleadings and materials that are appropriate for judicial notice. Rather than inviting an objection to evidence submitted in support of a joint motion, Incline filed two separate motions. Moreover, the Court need not rule on the Rule 12(b)(6) motion if it grants either component of this motion. Nothing about the form or order of Incline's motions was improper and Rule 12(b) does not require denial of this motion.

### CONCLUSION

Incline respectfully requests that the Court abstain from exercising jurisdiction and dismiss or stay this case, or alternatively, transfer the case to the District of Northern Texas. Incline also requests such other and further relief to which it may show itself entitled.

---

[28] *Response* p. 17.

Respectfully submitted,

By: */s/ Charlene C. Koonce*

    Cortney C. Thomas
     Texas Bar No. 24075153
     cort@brownfoxlaw.com
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Andrew C. Debter
     Texas Bar No. 24133954
     andrew@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX 75225
    Tel. 214.327.5000
    Fax. 214.327.5001

    Joshua A. Swanson
    North Dakota Bar No. 06788
    VOGEL LAW FIRM
    218 NP Avenue
    PO Box 1389
    Fargo, ND 58107-1389
    701.237.6983
    jswanson@vogellaw.com

*Attorneys for Defendant Incline Energy Partners, L.P.*

### **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce