# EXHIBIT A-2

| DC-22-06350<br>116th District Court, Dallas County | 3:23-cv-00455<br>Northern District of Texas | 1:23-cv-00209<br>District of North Dakota |
|---|---|---|
| 7. Phoenix brought together industry experts with decades of experience in their fields to build an industry leady in mineral rights. | | 11. Phoenix brought together industry experts with decades of experience in their fields to build an industry leading in mineral rights. |
| 8. At the time Phoenix was founded, the industry was dominated by Incline and very few firms were able to compete. | | 12. At the time Phoenix was founded, the industry was dominated by Incline and very few firms were able to compete. |
| 9. By deploying its proprietary technology and decades of industry experience, Phoenix was able to successfully compete with Incline. | | 14. Phoenix competes with Incline by deploying its proprietary technology and decades of industry experience. |
| 10. Further, Phoenix was able to outbid Incline directly on acquisitions and often came out on top when competing for the same investment opportunity. | | 16. Phoenix is successful because it offers the best price to mineral rights owners. |
| 11. Phoenix's success was met with hostility from Incline, specifically from Mr. Francis, Incline's Managing Partner.<br><br>13. In response to Phoenix's success, Mr. Francis and Incline set out on an intentional, willful, and malicious campaign against Phoenix with the intention of damaging Phoenix's reputation and ability to compete in the marketplace.<br><br>25. As Phoenix became more successful in acquiring mineral rights and other investments, Mr. Francis became incensed and set out on a campaign to intentionally interfere with and damage Phoenix's business and reputation. | 8. Soon after Mr. Ferrari founded Ferrari Energy, Ferrari Energy began to out-compete Mr. Francis and Incline, finding opportunities faster, valuing interests more quickly, and ultimately offering more money to prospective sellers. Mr. Francis was furious. He quickly grew discontent with Mr. Ferrari's competition and began a highly targeted, vicious campaign of harassing and defaming Mr. Ferrari with the intention of damaging his personal and professional reputation. | 18. Incline's principal, William Francis ("Francis") has lashed out at Phoenix in every way possible hoping to corner the mineral rights marked in North Dakota, including making defamatory statements to customers, lenders, investors, regulators both directly and via pseudonyms online. |
| 19. For example, on November 27, 2018, Bryan Hymer an employee of Incline, send to a landowner a link to an anonymous website | 13. On November 27, 2018, upon information and belief, Mr. Francis further caused Bryan Hymer, an employee of Mr. Francis, to send a mineral rights owner an | |

| DC-22-06350<br>116th District Court, Dallas County | 3:23-cv-00455<br>Northern District of Texas | 1:23-cv-00209<br>District of North Dakota |
|---|---|---|
| disparaging Mr. Ferrari and his company, Ferrari Energy. | email with a link to lawsuitsoilandgas.com and stated that Mr. Ferrari was involved in over six lawsuits to dissuade the mineral owner from doing business with Mr. Ferrari. | |
| 21.  Mr. Francis began emailing and sending anonymous packets to mineral rights sellers and industry executives, claiming that Mr. Ferrari was Phoenix's Chief Executive Officer and a convicted felon. | 10.  On information and belief, Mr. Francis has also anonymously transmitted packets of false and defamatory information to Mr. Ferrari's business associates and investment companies through the mail. | 22.  As part of its campaign to take advantage of North Dakota mineral rights holders, Incline's agents told potential lessors, including but not limited to the Bakke Family, that Phoenix was operated by criminals, among other false statements, in order to scare North Dakota mineral owners into paying more to Incline rather than selling or leasing to Phoenix.<br><br>49.  The attachments to the 10:17 p.m. email made numerous false accusations about Phoenix's current Vice President of Engineering, Adam Ferrari, accused him of committing various crimes while omitting the fact that the charges were dropped and the matter vacated, and lying to investors about his role in the business. |
| 27.  Further, and upon information and belief, Mr. Francis conspired with others, including at least one reporter at a Colorado newspaper, specifically Joe Moylan of the Greely Tribune, to publish false statements to third parties and to damage Phoenix's business. | 14.  Additionally, upon information and belief, Mr. Francis contributed false or misleading information throughout 2019 to the Greely Tribune, a Colorado-based newspaper, that it then ultimately relied on to publish various articles smearing Mr. Ferrari and his company.   Upon information and belief, Mr. Francis used the Greely Tribune as yet another vessel to spread false or misleading information regarding Mr. Ferrari in an effort to harm Mr. Ferrari and to compete against Mr. Ferrari's company. | |

| DC-22-06350<br>116th District Court, Dallas County | 3:23-cv-00455<br>Northern District of Texas | 1:23-cv-00209<br>District of North Dakota |
|---|---|---|
| 28.  Upon information and belief, Mr. Francis set up anonymous email accounts and sent, or had sent, packets of information to various industry players, including one email on January 7, 2021 to executives from Hess, ExxonMobil, and other leading oil and gas operators, alleging among other things, that Phoenix was violating SEC laws and was owned, financed, and managed by a convicted felon. | 19.  For example, upon information and belief, Mr. Francis, using one of his anonymous email accounts, sent an email on January 7, 2021 to executives of Hess, ExxonMobil, and other industry-leading oil and gas operators, alleging, among other things, that Mr. Ferrari was a "convicted criminal" in bold typeface.  The email also contained false claims that Mr. Ferrari was the CEO of Phoenix, which is untrue, and that Phoenix was violating SEC laws. | |
| 31.  Further on June 17, 2021, Mr. Francis emailed Ms. Crystal Taylor, an individual whom Phoenix was in the process of closing a real estate transaction.<br><br>32.  In the June 17, 2021 email, Mr. Francis stated: "I would love nothing more than to defend my company's track record versus the misdeeds that Phoenix/Ferrari has performed over the years.  Namely, the fact that their CEO was arrested and convicted for forging a mineral owners signature in order to defraud her of hundreds of thousands of dollars." | 22.  Continuing his malicious campaign, and on June 17, 2021, Mr. Francis also emailed Crystal Taylor, an individual who was in the process of closing a real estate transaction with Phoenix.  Despite the fact that Mr. Ferrari has never acted as CEO of Phoenix, Mr. Francis continued his pattern of disparagement against Mr. Ferrari, stating "I would love nothing more than to defend my company's track record versus the misdeeds that Phoenix/Ferrari has performed over the years.  Namely, the fact that their CEO was arrested and convicted for forging a mineral owner's signature in order to defraud her of hundreds of thousands of dollars. | 20.  Incline disparaged Phoenix to multiple lessors in North Dakota between 2021 and 2023 who Incline knew were considering offers from both Incline and Phoenix to obtain the leases. |
| 35.  In February and March of 2022, Mr. Francis contacted Dalmore Capital, Phoenix's broker-dealer, to disparage Phoenix, to disparage Mr. Ferrari, and try to derail Phoenix's latest capital raise. | 26.  Mr. Francis' harmful acts continued further into 2022.  On February 28, 2022, upon information and belief and based on Mr. Francis' prior pattern of activity, Mr. Francis published false and disparaging statements about Mr. Ferrari to Dalmore Capital ("Dalmore"), an investment group that Phoenix had engaged with and hired. | |

| DC-22-06350<br>116th District Court, Dallas County | 3:23-cv-00455<br>Northern District of Texas | 1:23-cv-00209<br>District of North Dakota |
|---|---|---|
| 36. In early May of 2022, Phoenix was moving to close on a $50,000,000 loan with its primary bank, First International Bank and Trust ("FIBT"), which closing was derailed, upon information and belief, by Francis's conduct.<br><br>37. On May 11, 2022, Phoenix received a call from FIBT, informing Phoenix that FIBT was backing out of the transaction.<br><br>38. Phoenix later learned that someone had sent FIBT an anonymous packet regarding Mr. Ferrari, which caused FIBT to back out of the transaction. | 25. In approximately 2021 or 2022, upon information and belief, Mr. Francis sent one of his slanderous packets to First International Bank and Trust ("FIBT") in order to further disparage Mr. Ferrari and damage relations between Mr. Ferrari and potential investors. | 42. In the spring of 2022 FIBT offered the solution for Phoenix to surpass Incline's closing speed with a $50,000,000 credit facility.<br><br>44. On May 5, 2022, Francis email Joel Brown ("Brown") "I was wondering if you're free later today or tomorrow to hop on a call to discuss a potential loan with my group, as well as another issue that I'd like to pick your brain about."<br><br>45. The other issue Francis wanted to discuss with Brown was FIBT's agreement with Phoenix to provide a $50,000,000 credit facility.<br><br>54. FIBT terminated the agreement to provide $50,000,000 in financing to Phoenix in bad faith based on the statements made by Francis on behalf of Incline. |
| 44. Plaintiff is an entity engaged in, among other things, the business of purchasing, owning, and selling mineral rights. Defendants defamed Plaintiff by intentionally and knowingly publishing falsehoods to third parties. Defendants knew at the time of the publications that the statements were false and damaging to Plaintiff's business and reputation. | 35. Mr. Ferrari is an individual that is professionally engaged in the oil and gas industry, including acting as a philanthropist, entrepreneur, business owner, and independent contractor. Mr. Francis repeatedly defamed Mr. Ferrari by intentionally and knowingly publishing falsehoods to third parties… | |
| 47. Plaintiff is an entity engaged in, among other things, the business of purchasing, owning, and selling mineral rights. Defendants published disparaging words | 42. Mr. Ferrari has suffered actual damages as a result of Mr. Francis' ruthless business practices, including the defamatory statements published about Mr. Ferrari. Mr. Ferrari's | 75. Incline's communication of false statements of fact, publishing other facts in a false light, unfairly competing to consumers and businesses in North Dakota for the |

| DC-22-06350<br>116th District Court, Dallas County | 3:23-cv-00455<br>Northern District of Texas | 1:23-cv-00209<br>District of North Dakota |
|---|---|---|
| about Plaintiff's economic interests, specifically including but not necessarily limited to, the character of Plaintiff's business. The words were false, and Defendants published the words with malice, and without privilege, and the publication caused Plaintiff to suffer damages, specifically including special damages. | personal and business reputation has been harmed by Mr. Francis' defamatory statements. Furthermore, Mr. Ferrari has suffered mental anguish damages as a result of Mr. Francis' tortious conduct. | purpose of harming Phoenix was otherwise tortious. |
| 50. Defendants willfully and intentionally interfered with Plaintiff's contracts and business relations when they published defamatory statements with the intent to harm Plaintiff's business. Defendants' interference proximately caused injury to Plaintiff, and Plaintiff has incurred actual damage or loss.<br><br>52. Plaintiff is an entity engaged in, among other things, the business of purchasing, owning, and selling mineral rights. There was a reasonable profitability that Plaintiff would have entered into one or more business relationships and/or contracts with one or more third persons, but Defendants intentionally interfered with the relationships by engaging in conduct that was independently tortious or unlawful. Defendants' interference proximately caused injury to Plaintiff, and Plaintiff suffered actual damage or loss. | | 65. Defendant Incline knew of the contracts between Phoenix and FIBT, and communicated information or otherwise instigated FIBT to breach its contract with Phoenix.<br>66. In their actions, Defendant Incline acted intentionally to instigate the breach by FIBT or acted with knowledge that the breach would result.<br>67. As a result, FIBT terminated ongoing business it had with Phoenix upon information and belief in favor of entering business with Incline.<br>68. By their conduct, the Defendants intentionally interfered with contracts Phoenix retained, and there was no justification for Incline's actions.<br>69. The interference was done with the direct purpose of injuring Phoenix and benefiting Incline at Phoenix's expense.<br>70. Phoenix suffered damages including but not limited to lost profits, lost future profits, and lost goodwill, as a result of the Defendants' actions in an amount to be determined at trial. |

| DC-22-06350<br>116th District Court, Dallas County | 3:23-cv-00455<br>Northern District of Texas | 1:23-cv-00209<br>District of North Dakota |
|---|---|---|
| 54. The foregoing conduct of Defendants constitutes an unfair method of competition. As a consequence of the foregoing, Plaintiff has suffered injury and damages. | | 82. Phoenix is entitled to relief for Defendants' unfair competition, including an accounting for and a constructive trust over, followed by the return of all property and profits wrongfully obtained by defendants from said unfair competition, damages, and interest and costs as allowed by law. |
| 60. Defendants' conduct complained of herein was intentional, with malice, with conscious indifference to Plaintiff's rights, and with a specific intent to cause serious harm and substantial injury to Plaintiff, and Defendants were consciously indifferent to the harm.  Based on the foregoing, Plaintiff is entitled to and seeks to recover exemplary damages against Defendants in an amount to be determined by the trier of fact. | 44. Mr. Francis' conduct complained of herein was intentional, with malice, with conscious indifference to Mr. Ferrari's rights, and with a specific intent to cause serious harm and substantial injury to Mr. Ferrari. Mr. Francis was consciously indifferent to the harm he caused Mr. Ferrari.  Based on the foregoing, Plaintiff is entitled to and seeks to recover exemplary damages against Defendant in an amount to be determined by the trier of fact. | 80. The foregoing actions of defendants were committed willfully, knowingly, maliciously and in conscious disregard of Phoenix's rights. |