UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

PHOENIX CAPITAL GROUP HOLDINGS, LLC,

                      Plaintiff,

    v.

INCLINE ENERGY PARTNERS, L.P.,

                      Defendant.

Case No. 1:23-cv-00209

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

I.      INTRODUCTION

The question raised by this Motion is simply whether Phoenix should be allowed to file a first amended complaint now, at the procedural outset of this case, before the Court has issued any substantive rulings or set a case scheduling order. The answer is plainly yes, under the permissive standard set forth in Rule 15(a)(2) which requires that "[a]mendments should be allowed with liberality." *Chestnut v. St. Louis County*, 656 F.2d 343, 349 (8th Cir. 1981). That is particularly true here, where the amendments add claims and parties at the earliest stage of litigation to ensure that the full dispute regarding the Incline Entities' conduct and resulting harm to North Dakotans and Phoenix, is determined on the merits.

Incline does not want its anticompetitive and tortious conduct examined through discovery and trial in this action. But Incline's aversion to being held accountable in a North Dakota court is not, of course, grounds to deny leave to amend. Denial is only appropriate in limited circumstances where the opposing party shows undue delay, unfair prejudice, or futility (i.e. that the new claims are "clearly frivolous"). Incline has not met—and cannot meet—its burden to make such a showing. Incline's opposition brief improperly invokes extrinsic evidence to make premature (and incorrect) arguments regarding the ultimate likelihood of success of Phoenix's claims, misapplies the Rule 15(a)(2) and Rule 9(b) standards, and attempts to distract with other meritless arguments and irrelevant asides. Phoenix's request to file a first amended complaint satisfies the governing criteria and should be granted.

II.     DISCUSSION

Eighth Circuit courts apply Rule 15(a)(2) to liberally permit amendments—both to add new parties and to add new claims. *See* Dkt. 31 at 12-14 (collecting cases). It is the law in this Circuit that leave to amend "***should be granted***" except in rare circumstances where there is "a good reason for denial, such as undue delay, bad faith, or dilatory motive, repeated failure to cure

1

deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 907-08 (8th Cir. 1999) (emphasis added). The rationale underlying this permissive standard is to "[a]fford[] parties an opportunity to test their claim[s] on the merits" rather than dismissing them early. *First Int'l Bank & Trust v. Oasis Petroleum N. Am. LLC*, 587 F. Supp. 3d 896, 899 (D.N.D. 2020). In opposing Phoenix's request, Incline seeks an outlier order that would run directly counter to Rule 15(a)(2) and this Circuit's prevailing practice and rationale.

### A. Phoenix's Request for Leave is Timely and Risks No Unfair Prejudice

Incline asserts that Phoenix has somehow "delayed, prejudicially" before seeking leave to amend. Opp. (Dkt. 37) at 7. Nonsense. This is Phoenix's first request to amend, timely made while this case is in its procedural infancy. The Court has not yet issued a scheduling order and there is no deadline to amend pleadings, much less a trial date. The Court has made no substantive rulings on the sufficiency of Phoenix's pleadings, much less on the merits of any claims. The parties have not conducted a Rule 26(f) conference or commenced discovery. There has been no delay, by any reasonable interpretation of that term, much less "undue delay."

In any event, "[d]elay alone is not reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001). "The burden of proof of prejudice is on the party opposing amendment." *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987). Incline does not—and cannot—meet this burden. The only purported "prejudice" Incline identifies is the unremarkable fact that leave to amend would "moot" the prior briefing on Incline's motions to dismiss. Opp. at 7. But previously briefing a motion to dismiss does not constitute cognizable prejudice. Courts routinely grant leave to amend while fully briefed motions to dismiss are pending. *See, e.g., Connie E. Lee Living Trust v. Lebenthal*, 2021 WL

27237, at *3 (D.N.D. Jan. 4, 2021) (denying motion to dismiss and granting leave to amend); *Schoeder Fam. LLLP v. Adams Cnty.*, 2017 WL 11249459, at *4-5 (D.N.D. Mar. 28, 2017) (denying motion to dismiss and granting motion for leave to amend filed while the motion to dismiss was fully briefed and pending).  Incline has not shown prejudice or undue delay.

    **B.**    <u>**Phoenix's Amendments are Not Futile**</u>

Incline spends the bulk of its opposition arguing that Phoenix's proposed amendments are purportedly "futile."  Opp. at 8-20.  What Incline appears to be saying, however, is it does not believe Phoenix will ultimately succeed on the merits of its claims.  But "[l]ikelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is ***clearly frivolous***."  *Becker*, 191 F.3d at 908 (emphasis added); *Weslease 2018 Operating LP v. 640Water, LLC*, 2021 WL 6805680, at *2 (D.N.D. Sept. 7, 2021) (leave to amend under Rule 15(a)(2) "***should only be denied on the merits if it asserts clearly frivolous claims*** or defenses") (emphasis added); *Daniels v. Anderson*, 2003 WL 21715350, at *3 (D.N.D. July 22, 2003) (same).  Incline has not met its burden of proving that Phoenix's claims, as pled in the Amended Complaint, are "clearly frivolous" such that granting leave would be futile.

    1.    **Phoenix's Antitrust Claims are Not Futile**

Phoenix's antitrust claims are properly pled and are far from "frivolous."  They are based on Incline's multi-faceted anticompetitive campaign to prevent Phoenix from becoming a competitive threat to Incline in the relevant market.  The Eighth Circuit has found such conduct to be barred by the antitrust laws.  *Int'l Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1268 (8th Cir. 1980).  The Court should grant leave to Phoenix leave to assert its claims.

    a.    <u>Phoenix's Antitrust Claims are Properly Pled</u>

As the Supreme Court has explained, it is a misapplication of antitrust law for a court to treat a plaintiff's allegations of anticompetitive conduct "as if they were … completely separate"

3

by "tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962). Instead, alleged conduct must always be analyzed as a whole. Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 310c7 (4th and 5th eds. 2024). Incline's anticompetitive campaign against Phoenix has many tentacles, most of which do not involve fraud. *See, e.g.,* Dkt. 30-1, ¶¶ 54-56 (pressuring EnergyNet to stop doing business with Phoenix to "make it more difficult for Ferrari to continue doing business"); *id.* ¶¶ 57-59 (conspiring with convicted felon for "Online AF Campaign" involving two websites disparaging Mr. Ferrari and Phoenix and SEO manipulation to artificially manipulate web traffic); *id.* ¶¶ 64-67 (disparaging Phoenix to North Dakota rights holders to dissuade them from closing deals with Phoenix); *id.* ¶¶ 71-98 (thwarting Phoenix's financing efforts with FIBT and others). Rule 9(b)'s pleading standard is inapplicable to the overall anticompetitive scheme alleged in the proposed amended complaint.

While some aspects of Incline's anticompetitive campaign certainly involve fraud, the amended complaint sufficiently alleges the who, what, where, when, and how of the specific instances known to Phoenix to satisfy Rule 9(b). *See, e.g.,* Dkt. 30-1, ¶¶ 87-96 (alleging Mr. Francis called and emailed Joel Brown at FIBT on May 5, 2022 and told him falsehoods concerning Phoenix, including that it was being run by a "convicted criminal");[1] *see also id.* ¶¶ 64-68 (providing details of statements made to Bakke family disparaging Phoenix). Phoenix further alleges that these examples are part of the Incline Entities' broader campaign, the full

---

[1] Incline's opposition makes the same false statement that it (and its manager Mr. Francis) has maliciously published for years—i.e., that Phoenix's current CEO, Adam Ferrari, is purportedly "a felon." Opp. at 1. Not true. He was never convicted of any crime, felony or otherwise. The charges to which Incline misleadingly refers (Opp. at 1, n.3) were **dismissed with prejudice**. After weighing the stress and expense of proving his innocence at trial, Mr. Ferrari accepted a plea agreement because it allowed him to **withdraw** his plea of guilty, have the charge **dismissed with prejudice**, and have his record remain **entirely clean of any criminal conviction**.

scope and details of which are still unknown to Phoenix. *See, e.g., id.* ¶¶ 60, 63, 67, 100. By alleging Incline's systematic anticompetitive campaign, Phoenix has more than satisfied the requirements of Rule 9(b) to the extent it applies. *See, e.g.*, *State Farm Mutual Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, 2015 WL 6445324, at *6 (D. Minn. Oct. 23, 2015) (where plaintiff alleges a "systematic practice" of conduct over extended period, it "need not allege the specific details of every fraudulent claim"); *see also United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (under Rule 9(b) the complaint "must provide some ***representative examples*** of [the] alleged fraudulent conduct") (emphasis altered).

          b.      <u>Market Definition is an Issue of Fact Not Properly Resolved on a Motion to Amend</u>

In its attempt to argue that Phoenix's antitrust claims are futile, Incline argues that Phoenix has failed to properly allege a relevant market. *See* Opp. at 11-20. But Incline ignores Phoenix's detailed factual allegations regarding the market at issue, which the Court must credit at this stage of the case. *See* Fed. R. Civ. P. 12(b); *Data Mfg, Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 851 (8th Cir. 2008) ("The factual allegations of a complaint are assumed true and construed in favor of the plaintiff[.]"). Instead, Incline improperly points to purported evidence outside of the pleadings. These materials are improper for the Court to consider on a motion to dismiss, much less a motion to amend. *See* Fed. R. Civ. P. 12(d) ("When matters outside of the pleadings are presented and not excluded by the trial court," a Rule 12(b)(6) motion "must be treated as a motion for summary judgment."); *Carter v. Stanton*, 405 U.S. 669, 671 (1972) (per curiam); *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992).

Incline's attempt to invoke judicial notice to disguise its reliance on extrinsic references fails. A judicially noticed fact must be one "not subject to reasonable dispute" and a public record may only be noticed to establish its existence but not for "the truth of the documents'

5

contents." *Graham v. Catamaran Health Sols., LLC*, 940 F.3d 401, 405 n.1 (8th Cir. 2017); Fed. R. Evid. 201(b). But Incline offers these materials for their truth. First, Incline's materials (and the conclusions they urge the Court draw therefrom) are highly disputed and drive at market definition—a classic issue of fact—and cannot be judicially noticed. *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 345 (8th Cir. 1995) ("Antitrust claims often rise or fall on the definition of the relevant market."); *see also Morgenstern v. Wilson*, 29 F.3d 1291, 1296 (8th Cir. 1994) (same). Second, even if Incline's materials can be judicially noticed (they cannot), they are irrelevant because the Court cannot even consider these materials for the truth of their contents in assessing the validity of Phoenix's antitrust claims. *Graham*, 940 F.3d at 405; *Par v. Wolfe Clinic, P.C.*, 70 F.4th 441, 448 (8th Cir. 2023) ("Courts are reluctant to dismiss antitrust complaints before the parties have had an opportunity to fully conduct discovery.").

      c. <u>Incline Ignores Phoenix's Attempted Monopolization Claim</u>

Incline completely fails to address Phoenix's well-pled attempted monopsonization claim. Unlike a claim for actual monopsonization, a claim for attempted monopsonization only requires (1) intent to monopsonize a market, (2) exclusionary conduct, and (3) a dangerous probability of success. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454-56 (1993) (reciting attempted monopolization elements, which mirror attempted monopsonization). Phoenix's amended complaint properly pleads factual allegations satisfying all three elements. *See* Dkt. 30-1, ¶¶ 48-106. Incline does not address this claim outside of its improper arguments regarding market definition (which should be ignored, as discussed *supra*). *See* Opp. at 11-20 (improperly citing extrinsic evidence in debating market definition). Incline's failure here is unsurprising—there is no basis to exclude Phoenix's attempted monopsonization claims at this

6

stage[2] and leave to amend should be granted.

        **2.    Phoenix's N.D.C.C. Claim for Unlawful Sales/Advertising Practices is Not Futile.**

Incline asserts that Phoenix's claim under N.D.C.C. § 51-15-01 *et seq*, is futile for two reasons. First, it contends Phoenix fails to adequately plead the claim under Rule 9(b). *See* Opp. at 9-10. This argument fails here, just as it does with the antitrust claims. *See supra* Section II(B)(1)(a). Phoenix identified a known example of Incline's deceptive conduct towards mineral rights owners and alleged it to be part of a broader, systematic campaign of deception. *See* Dkt. 30-1, ¶¶ 63-67, 118-120; *see also Roop*, 559 F.3d at 822; *State Farm*, 2015 WL 6445324, at *6. Second, Incline claims its deceptive practices are not actionable because its acquisition and advisement services are purportedly "provided for free." Opp. at 8. The extent to which Incline receives compensation for those services, and in what form, is a factual dispute, which is not appropriate for resolution at the pleadings stage. Incline's futility argument should be rejected.

## III.    CONCLUSION

Phoenix respectfully requests leave to file its Amended Complaint (Dkt. 30-1).

Dated: September 3, 2024        By:    /s/ *Ronald H. McLean*

                                                    Ronald H. McLean (ND #03260)
                                                  Ian R. McLean (ND #07320)
                                                  SERKLAND LAW FIRM
                                                  10 Roberts Street North
                                                  Fargo, ND 58102-4982
                                                  Phone: 701.232.8957
                                                  Fax: 701.237.4049
                                                  imclean@serklandlaw.com
                                                  rmclean@serklandlaw.com

---

[2] Even Incline's argument that Phoenix possesses a similar share of the proposed relevant market falls flat. Attempted monopsonization focuses on *efforts to exclude competitors* rather than actual market power. *Spectrum Sports*, 506 U.S. at 454-56. Thus, Phoenix's ownership stake in the relevant market is irrelevant to this inquiry. *Id*.

and

John T. Ryan *(admitted Pro Hac Vice)*
Latham & Watkins LLP
12670 High Bluff Drive
San Diego, CA 92130
Phone: 858.523.5400
jake.ryan@lw.com

Andrew R. Gray *(admitted Pro Hac Vice)*
Latham & Watkins LLP
650 Town Center Dr. 20th Fl.
Costa Mesa, CA 92626
Phone: 714.540.1235
andrew.gray@lw.com

***Attorneys for Plaintiff***
***Phoenix Capital Group Holdings, LLC***